In the Matter of FRANK N. MACHABEE, as Commissioner of Public Welfare of Franklin County, Petitioner, against ROY DE SHAW, Respondent.

County Court, Franklin County, February 1, 1954.

*James F. Mills, County Attorney,* for petitioner.

*Roy De Shaw,* in person, and *Allen L. Gurley* for respondent.

LAWRENCE, J. The Commissioner of Public Welfare, proceeding under article 3 of title 6 of the Social Welfare Law, seeks in this proceeding to compel Roy De Shaw to support his parents, who heretofore have been old-age recipients. The record shows that Roy De Shaw operates a pig farm of 180 acres and

that he has two contracts for the collection of garbage, one with the Village of Potsdam and one with the Village of Canton, both in St. Lawrence County. From each of these villages he receives $5,040 yearly.

He says that his only other income in 1953, was about $320 received from the sale of pigs.

Roy De Shaw claims that the $840 monthly gross income which he receives is not sufficient to enable him to spend about $86 monthly for the support of his two elderly parents.

He has testified regarding his monthly expenses as compared to his income and he has also given evidence of his assets and liabilities. He contends that his expenses exceed $1,028.40 monthly and that his liabilities total $12,429.25.

Like a great many people these days, he is faced with obligations to make monthly payments on debts payable by installments. Some of these are secured debts. For example, because of a fairly recent legal requirement that garbage be " cooked " before being fed to pigs, he has purchased cooking equipment and apparently given a chattel mortgage on 200 pigs to secure the monthly payment of part of this equipment. He also has to meet a small monthly payment on a $600 farm mortgage, pay the Federal Housing Authority $5 monthly for siding on the pigpen and from the testimony it appears that while he pays his son no salary he gives him spending money and also makes a monthly payment on a note to a bank and that the son works for him under that arrangement.

In addition to that there are what I shall call true income-producing expenses, such as the $200 salary paid to Ceylon Foster, the driver of one of the garbage trucks, the garage bills and fuel oil for heating the pigpen and part of the automobile insurance.

But many of such monthly payments are made upon indebtedness for new capital assets, as a result of which he appreciates his inventory. It appears that one of the two garbage contracts was awarded to him in the last few months. It being obvious that he would have more garbage, he decided to keep more pigs. To keep more pigs, he needed more equipment. So he bought more equipment and apparently increased the size of the pigpen. He now plans not to sell any of the newborn pigs until he substantially increases his inventory. All of this is probably good business.

It is however seriously to be doubted whether any person in the pig business or in any other business should be allowed to expand that business at the expense of the taxpayers who

by reason thereof are required to support his parents while he does so.

This is a far different thing than that of allowing a man to keep his hard earned assets or his " meager life savings " for his old age.

If it is far different when applied to income-producing assets, it is even more so when applied to nonincome-producing assets. For example Roy De Shaw bought a television set a few months ago. It costs $379.95. He is supposed to pay $19 on it each month. His wife testifies that she has been ill for some years with a stomach ailment and that she digests her food more easily when reclining and that to be able to watch television during that time decreases her nervous tension. This is a somewhat unusual observation but I believe she is sincere.

On the other hand if Franklin County pays $86 monthly for the support of her husband's parents, the county will in six months have paid an amount equal to the cost of the television set. Are there not those who would think that indirectly the county is thus buying a television set for the De Shaw family? Some of the expenses incurred in the operation of the son's automobile or the payment of insurance premiums upon it may be subject to a similar criticism.

The respondent cites many cases.

*Copeland* v. *Weber* (175 Misc. 403) was a case where the assets were a farm worth $1,000 plus stock and tools. No income was shown. Under the rule laid down in that case I believe that Roy De Shaw has something over and above the amount " sufficient " for his own needs.

*Matter of Miller* (64 N. Y. S. 2d 258) was a case where the liability turned upon the question of wiping out meager life savings, which is not the issue here.

*Fuller* v. *Galeota* (271 App. Div. 155) was a case where recovery was had. Under the quoted phrase from that case, I believe Roy De Shaw is fully able to support his parents out of his present income.

*Matter of Diele* (187 Misc. 196) was another case where there was a claim against the estate the only asset of which was a $7,000 bank account. The income had been very small. If this case is made the sole criterion it can not be said that the support of these dependents will " impoverish " Roy De Shaw.

*Matter of Tarantino* (183 Misc. 288), affirmed without opinion (271 App. Div. 780), was another case of claim against an estate. Here again the question of what the decedent's

income had been before his death was involved. The picture is far different than that presented in this case.

*Matter of Claiborn* (51 N. Y. S. 2d 543) is a case where $1,000 had been furnished to the grandchildren of a poor woman whose monthly income was $80 and whose only assets were life insurance policies with some cash surrender value.

In none of the cases cited was there any approach to the kind of a gross income received by the respondent as in this case. As I see it in some manner he should be able to curtail some of his expenses.

Submit order determining that Roy De Shaw is of sufficient ability to support his parents.