Richards W. Hannah, J.
This is a petition under section 415 of the Family Court Act by the Department of Welfare against a son of the petitioner for the support of his mother, who is presently destitute and receiving welfare of $257.55 a month. The mother, age 87, is confined to a hospital in a terminal stage of her illness, and it is expected that she will not live another year. Other petitions have been filed against two other sons, in which decisions have been rendered.
The respondent, “John Doe”, age 61, is married and his children are married. He lives with his wife in an apartment for which he pays $178 a month rent. He and his wife each own a 45% interest in a furniture business, each share of which is valued at about $22,000. He owns dividend-paying stocks worth over $20,000 and has $1,500 in the bank. His salary is $180 net a week and his wife’s is $59.40 net. The business furnishes him an automobile and pays all its expenses. Respondent lists his expenses as $178 a month for rent, $70 for his wife to run the house, $120 monthly for insurance, $60 monthly for medical care and $100 monthly for miscellaneous expenses. He has been reimbursing the Department of Welfare $100 monthly. Previously, he had voluntarily paid up to $250 a month when his brothers contributed but when the Department of Welfare told the brothers they did not have to contribute, the respondent stopped temporarily.
*534 Section 415 of the Family Court Act provides that a child of a recipient of public assistance, if of sufficient ability, is responsible for the support of a parent. In its discretion the court may require a child or children to contribute a fair and reasonable sum for such support. In the event that more than one child is held responsible, the court may apportion the amount among the children in a just amount according to the respective means of the children.
Moreover, there is a presumption on the part of the child sought to be held responsible that he has the ability to support his parents (Family Ct. Act, § 437). However, the presumption is rebuttable (Matter of Liddle v. Roberts, 15 A D 2d 620).
While the respondent’s primary obligation is to his wife, the respondent must grasp that the Legislature has imposed upon adult children the duty to the community to save the general public the cost of supporting an aged parent, who is unable to support himself. That is a statutory duty which the respondent must discharge and the court enforce as one of the incidents of living under our type of government (Mendelsohn v. Mendelsohn, 192 Misc. 1014). The whole concept behind this type of law is the protection of the public purse. (Neuerstein v. Newburger, 53 N. Y. S. 2d 906.) Formerly, indigent parents of advanced age were ordinarily cared for within the family group but today the feeling seems to prevail among many children that the government should assume the entire responsibility for the care of their aged parents. Too often we hear children complain that they must deprive themselves of a certain luxury or lower their high standard of living, if called upon to even help, much less support their parents. One of their excuses is that they pay taxes and that this is an obligation of the government. Indeed, in most cases there is little or no love or even consideration for the aged and destitute father or mother. Today we see parents of advanced ages, totally disabled and on the threshold of death, being cared for in nursing homes and hospitals at public expense. The children of these parents are living very comfortably in homes of considerable worth, earning substantial salaries and with money in the bank but are not contributing to the support of these parents. Most of these hearings are bitterly contested by and between the children.
The courts have set down tests to determine whether the children can be called upon for support. One is the test of “ sufficient ability ”, which depends on the facts of every case, and is a matter for the discretion of the court.
*535 In the Matter of Modafferi (174 Misc. 789) the court said: “ The statute declares his responsibility ‘ if of sufficient ability. ’ The only reasonable interpretation of the quoted phrase is that such liability exists, if the cash and property available to him is adequate to permit payments. Any other construction would permit a millionaire who chose to allow his funds to lie idle and who was not employed, to escape liability whole holding responsible a person with no capital assets but earning meagre wages. Here the decedent admittedly possessed property in cash and real estate worth more than $14,500. Unquestionably, he was possessed of ‘ sufficient ability ’ to ward off starvation from his descendants, which would, perhaps have occurred had the public authorities not intervened.”
Another test used is whether there is sufficient money for the person’s needs and something remaining over and above the needs for sickness and old age (Copeland v. Weber, 175 Misc. 403; Matter of Miller, 64 N. Y. S. 2d 258).
Now we must examine the capital assets, the income and expenses of the respondent to determine if a surplus exists and if there is something over and above the expenses. The expenses must be scrutinized closely to determine their validity and necessity, for otherwise it would be possible to live luxuriously, incur unnecessary debts, oblige oneself to large installment payments on homes, automobiles and appliances, and thus eat up one’s income so that no surplus remained. Our courts have said that one cannot expand his business at the expense of the taxpayers while his parents are on welfare. (Matter of Machabee v. De Shaw, 205 Misc. 85.) The court was skeptical of a child purchasing an automatic clothes dryer for $177 on the installment plan while her mother was on welfare and she was not contributing to her support. (Matter of Kelly [Cook], 22 Misc 2d 479.) However, a grandparent is not required to use a substantial part of his principal in maintaining his grandchildren and in this way gradually impoverish himself. (Matter of Tarantino, 183 Misc. 288.)
Respondent complains that he is being penalized for his thrift, his business acumen, his energy and his success. He overlooks the fact that with success go certain responsibilities. Certainly he is not being penalized for his success for he had lived better, enjoyed certain luxuries and gained respect in his community. He finds himself today a man of means with a successful business.
I find that considering the respondent’s salary of $180 weekly, his $22,000 interest in his business, his income-paying stocks worth over $22,000, his $1,500 bank deposit and his expenses, *536 which I feel are inflated, that an order should be entered against him for $83 a week, starting November 29, 1963. In my opinion the respondent possesses both the ability, surplus and capital to justify such an order.