*448 OPINION OF THE COURT
William P. Warren, J.
This court has before it objections to the order of Hearing Examiner Miklitsch dated April 8, 1991 filed by counsel for the petitioner. The respondent has not interposed a rebuttal.
The facts of this case are not in dispute. Petitioner was married to the respondent on March 17, 1988 and they separated in October or November of 1989. She has a child but not from her marriage to this respondent. Petitioner and her child are social services recipients and a petition seeking spousal support and child support was filed with the court. Thereafter a hearing was held on March 11, 1991 and at the conclusion of the hearing an order was made directing the respondent to pay the sum of $65 per week in spousal support and $65 per week in child support for the petitioner’s child. The amount of child support awarded was determined by the Hearing Examiner as the child’s portion of the public assistance grant. She specifically declined to apply the Child Support Standards Act (L 1989, ch 567) to this fact pattern. Petitioner’s counsel requested the issuance of an income execution which request was denied for the reason that "the respondent has been current on his support and the court finds that to be good cause.”
The petitioner raises two issues in her objections. First, that the Hearing Examiner should have ordered the respondent to pay $170 per week in child support which is the amount he would be obligated to pay if the Child Support Standards Act percentage were to be applied. Second, that the Hearing Examiner erred in finding good cause to not require the immediate issuance of an income execution.
The first issue raised in this proceeding appears to be one of first impression. The court has been unable to find a reported case addressing the question of the liability of stepparents since the enactment of the Child Support Standards Act, which became effective September 15, 1989, and the enactment of the 1990 amendment to that act by chapter 818 of the Laws of 1990. An analysis of this question begins with a review of section 415 of the Family Court Act which provides as follows: "Except as otherwise provided by law, the spouse or parent of a recipient of public assistance or care or of a person liable to become in need thereof or of a patient in an institution in the department of mental hygiene, if of sufficient ability, is responsible for the support of such person or *449 patient, provided that a parent shall be responsible only for the support of his child or children who have not attained the age of twenty-one years. In its discretion, the court may require any such person to contribute a fair and reasonable sum for the support of such relative and may apportion the costs of such support among such persons as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case and their respective means. Step-parents shall in like manner be responsible for the support of children under the age of twenty-one years.”
For many years now that section of the law has been interpreted as requiring a stepparent to be responsible for the support of a stepchild either when the child is in receipt of public assistance benefits or when he/she is likely to become in need of public assistance. (Baird v Baird, 45 AD2d 930; Matter of Du Mond, 196 Misc 14.) This liability is entirely statutory and there was no common-law obligation to support stepchildren. (Matter of Sugarman v "Burns”, 76 Misc 2d 813, 814, citing Matter of Kane v Nacci, 245 App Div 1, appeal dismissed 269 NY 13.) Further, the courts have held that the liability imposed by section 415 of the Family Court Act is discretionary. (Matter of Sevrie v Sevrie, 90 Misc 2d 321; Matter of Sugarman v "Burns”, supra; see also, Family Ct Act §445.)
It is also clear from a review of section 415 of the Family Court Act that the purpose was to protect the public purse. The Practice Commentary by Douglas J. Besharov to section 415 of the Family Court Act (McKinney’s Cons Laws of NY, Book 29A, at 101) stated: "The purpose of this section is to protect the public purse by holding spouses, parents, and stepparents responsible for children and spouses who are in need of public assistance or liable to need it, or who are in institutions of the Department of Mental Hygiene. [Anonymous v. Anonymous, 41 Misc.2d 533, 246 N.Y.S.2d 227 (Fam. Ct., Bronx Co., 1963).] * * * However, there are two important limitations to this additional liability. First, the support liability is limited to the amount that would be in the public assistance grant, often called a 'public charge basis.’ Secondly, the liability is discretionary with the court; the court is free, on the basis of justice and equity, not to impose the liability.”
While section 415 of the Family Court Act was not amended by the State Legislature when it enacted the Child Support Standards Act in 1989, subsequently, by the Laws of 1990 (ch 818), the following italicized language was added to subdivi *450 sion (1) (g) of Family Court Act § 413: "Where the court finds that the non-custodial parent’s pro rata share of the basic child support obligation is unjust or inappropriate, the court shall order the non-custodial parent to pay such amount of child support as the court finds just and appropriate, and the court shall set forth, in a written order, the factors it considered and the reasons for the level of support and such written order may not be waived by either party or counsel; provided however, and notwithstanding any other provision of law, including but not limited to [§ 415] of this act, the court shall not find that the non-custodial parent’s pro rata share of such obligation is unjust or inappropriate on the basis that such share exceeds the portion of a public assistance grant which is attributable to a child or children. ”
The question to be analyzed is did the enactment of this section of the Child Support Standards Act effectively overrule the provisions of Family Court Act § 415 insofar as they have been interpreted to apply to stepparents. For the reasons set forth below, this court believes that section 415 of the Family Court Act as it applies to the liability of stepparents for the support of children remains limited to the public assistance grant notwithstanding what might appear to be contrary language of chapter 818 of the Laws of 1990.
The New York State Court of Appeals in Matter of Commissioner of Social Servs. v Segarra (78 NY2d 220), recently decided the question of whether the obligation of a father for the support of his child receiving public assistance was limited to the amount of the child’s share of the public assistance rather than the child’s actual needs and the father’s means. In reversing the Appellate Division, First Department (165 AD2d 655), the court reviewed chapter 818 of the Laws of 1990 which amended Family Court Act § 413. It stated: "The legislative memorandum indicates that this amendment was intended as a clarification, not a change of the law, and was aimed particularly at courts that have refused to order parents to pay support that exceeds the child’s share of the public assistance grant (Sponsors Mem, Assembly 115505-C). Thus with respect to a parent’s child support obligation, Family Court Act § 415 merely supplements existing law by making it clear that a parent’s duty to support is not abrogated by a child’s receipt of public assistance; it does not limit that obligation to the amount of the public assistance grant.” (Matter of Commissioner of Social Servs. v Segarra, 78 NY2d 220, 223-224, supra.)
*451 The Court of Appeals decision involved a proceeding by the Commissioner of Social Services against an adjudicated father, not a stepfather. Therefore, if a rational distinction can be made between the liability of natural parents and stepparents, that decision is not necessarily controlling the issue before this court. A review of the case law reveals a long-standing distinction in the law between the child support obligations of a stepparent and a natural or adoptive parent.
In Matter of Uhrovick v Lavine (43 AD2d 481), the issue was whether the State Commissioner of Social Services could consider the income of a stepparent available to a child on public assistance in the same manner that a natural or adoptive parent’s income would be considered. The court answered that question in the negative and stated: "Both subdivision 1 of section 101 of the Social Services Law and section 415 of the Family Court Act are inadequate as they require stepparent’s support equivalent to that of a natural or adoptive parent only where a minor child is without means and liable to become a public charge.” (Matter of Uhrovick v Lavine, 43 AD2d 481, 483, supra.)
In 1979 the Appellate Division, Second Department, in Matter of Slochowsky v Shang (67 AD2d 926), the court again distinguished between the obligations of natural and adoptive parents on the one hand and stepparents on the other. In construing 45 CFR 233.90, the court found that a New York stepparent does not qualify as a parent since the duty to support a stepchild is different than that of a natural or adoptive parent.
Clearly, the case law has established a difference in the child support obligations of stepparents from those of natural or adoptive parents. Family Court Act § 415 and Social Services Law § 101 are the statutes which create the child support liability for stepparents and they have not been amended to reflect any legislative intent to change the extent of a stepparent’s child support obligation. However, this court must confront the clear language of Family Court Act § 413 (1) (g) as amended by chapter 818 of the Laws of 1990 which states that "notwithstanding any other provision of law including, but not limited to [§ 415] of this act, the court shall not find that the non-custodial parent’s pro rata share of his support obligation is unjust or inappropriate on the basis that such share exceeds the portion of a public assistance grant which is attributable to [the] child”.
*452 It is this court’s view that the term "non-custodial parent” as used in Family Court Act § 413 (1) (g) must be interpreted as referring to a noncustodial natural or adoptive parent and not a stepparent, since only such an interpretation comports with the case law, Family Court Act § 415, Social Services Law § 101 and the legislative intention as expressed by the memoranda accompanying the enactment of chapter 818 of the Laws of 1990. To interpret "non-custodial parent” as including a stepparent would require a finding of a legislative intent not merely to assure the child support was awarded on the basis of the needs of the child and the means of the parent (Matter of Commissioner of Social Servs. v Segarra, 78 NY2d 220, supra), but also an intent to reverse the long-standing New York State policy of requiring stepparents to be liable for the child support of their stepchildren only where the child receives public assistance or is likely to receive public assistance. If Family Court Act § 413 (1) (g) were deemed applicable to stepparents and their liability was not limited to the public assistance grant, then a substantive change in stepparent liability would have been made by the enactment of that section.
Accepting arguendo petitioner’s position would result in a child support order of $170 per week, an amount which would be in excess of the child’s public assistance grant. Therefore, she would no longer be eligible for public assistance yet her stepfather would be charged with her support. In discussing the legislative history, the Court of Appeals stated that the amendment was intended "as a clarification, not a change of the law”. (Matter of Commissioner of Social Servs. v Segarra, 78 NY2d 220, 223, supra.) Since no substantive change in the liability of stepparents was created by the enactment of the Child Support Standards Act in 1989 or chapter 818 of the Laws of 1990, that liability remains limited to the amount of the public assistance grant.
Petitioner’s next basis for objecting to the order of the Hearing Examiner is that she erred by finding good cause to not have an income execution issued by the Support Collection Unit. As the basis for so finding the Hearing Examiner stated that the respondent had been current on his support. Again, the court is directed to chapter 818 of the Laws of 1990 which, inter alla, amended Family Court Act § 440. The pertinent portion of the amendment added reads as follows: "(b) Unless (1) the court finds and sets forth in writing the reasons that there is good cause not to require immediate income withhold *453 ing; or (2) when the child is not in receipt of public assistance, a written agreement providing for an alternative arrangement has been reached between the parties, the support collection unit shall issue an income execution immediately for child support or combined spousal and child support. Such written agreement may include an oral stipulation made on the record resulting in a written order. For purposes of this paragraph, good cause shall mean substantial harm to the debtor. The absence of an arrearage or the mere issuance of an income execution shall not constitute good cause. ” (Emphasis added.)
It is quite clear from the language of this statute that the lack of arrearages, in and of itself, does not establish good cause. Since the only basis for the Hearing Examiner’s determination of good cause was the lack of arrearages, the objection must be allowed and her order reversed as to that issue. In all other respects, the objections are denied.