424 S.E.2d 771

**STATE of West Virginia ex rel. Patricia Ann STUTLER, Plaintiff Below, Petitioner,**

v.

**Honorable Clarence L. WATT Judge of The Circuit Court of Putnam County,**

and

**Brady Ralph Paxton, Defendant Below, Respondent.**

No. 21344.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 4, 1992.

Decided Dec. 14, 1992.

Barbara A. Brown, Teays, WV, for petitioners.

D. Michael Fewell, Winfield, WV, for respondent.

WORKMAN, Justice:

Petitioner Patricia A. Stutler has requested this Court to issue a writ of prohibition against The Honorable Clarence L. Watt of the Circuit Court of Putnam County to prevent execution of a final order staying an income withholding for. child support. We agree with the contentions of the Petitioner and grant the writ of prohibition against the lower court preventing the enforcement of the April 29, 1992, decision to stay the income withholding.

## I.

The Petitioner and Brady Ralph Paxton are the parents of Rachel D. Stutler, born March 25, 1987. In February 1988, the Petitioner requested assistance from the West Virginia Child Advocate's Office in establishing paternity and support for Rachel. By order dated July 18, 1989, paternity was established, and Brady Paxton was ordered to pay $100 per month as child support from June 5, 1989, through December 5, 1994. From January 5, 1995, through December 5, 2005, Mr. Paxton was to pay $300 monthly in child support.[1] The payments were to be made on the fifth day of each month and were to be paid directly to the Child Advocate's Office. Mr. Paxton failed to pay the June 5, 1989, installment until he was ordered to do so by the lower court on March 20, 1992.[2] Moreover, although Mr. Paxton paid the other monthly installments, the payments were frequently late. The Petitioner provided this Court with a list of the monthly payments which were paid late and the number of days the Petitioner was forced to wait for each late payment. Although the Petitioner was occasionally only a few days late, he was sometimes as many as sixteen days late in making these payments. From July 1989 through March 1992, Mr. Paxton had accumulated eighty-six non-consecutive days of delinquency in child support payments. In order to obtain a more consistent payment schedule, the Petitioner requested that the Child Advocate's Office initiate income withholding. On March 3, 1992, the Child Advocate's Office mailed a "notice to employer/source of income to initiate income withholding" to the Putnam County Board of Education, Mr. Paxton's employer. That notice informed Mr. Paxton's employer that $50 per pay period was to be withheld from Mr. Paxton's income. The scheduled withholding was for current support rather than for any arrearage.

On March 10, 1992, Mr. Paxton moved the lower court to quash the income withholding, contending that the notice to initiate withholding had been filed without notice or previous complaint, that the withholding constituted an undue hardship, and that it served no valid purpose other than to harass, embarrass, and inconvenience him. Furthermore, Mr. Paxton alleged that his reputation in the community had suffered as a result of the Petitioner's conduct. He also contended that no additional benefit would be derived for Rachel and that the continuance of the withholding could result in a reduced ability to provide for Rachel.

At a March 20, 1992, hearing, the lower court removed the income withholding requirement. The Petitioner has requested this Court's review and has contended that she is entitled to wage withholding to ensure reliable, timely child support payments.

## II.

West Virginia Code § 48–2–15b (1992) contains the prerequisites for withholding income from an obligor. Although the statute specifically applies to orders entered or modified after November 1, 1990,

1. This method was apparently designed to result in an average of $214.35 monthly from birth to Rachel's 18th birthday. The child support formula had indicated an amount of $205.80 per month.

2. The Child Advocate's Office had attempted to obtain the payment from Mr. Paxton and had mailed him a "delinquent payment notice" in January 1991. Mr. Paxton did not respond to that notice and did not pay until the court order of March 20, 1992.

it also applies to the present case, in which the order was entered on July 19, 1989, by virtue of subsection (e), which provides as follows:

Every support order entered by a circuit court of this state prior to the first day of November, one thousand nine hundred ninety, shall be considered to provide for an order of income withholding, by operation of law, which complies with the provisions of this section, notwithstanding the fact that such support order does not in fact provide for such order of withholding.

Subsection (b) provides as follows:

(b) Every such order as described in subsection (a) of this section shall contain language authorizing income withholding to commence without further court action, as follows:

(1) The order shall provide that income withholding will begin immediately, without regard to whether there is an arrearage: (A) When a child for whom support is ordered is included or becomes included in a grant of assistance from the division of human services or a similar agency of a sister state for aid to families with dependent children benefits, medical assistance only benefits, or foster care benefits; or (B) when the support obligee has applied for services from the child advocate office or the support enforcement agency of another state or is otherwise receiving services from the child advocate office as provided for in chapter forty-eight-a [§ 48A–1–1 et seq.] of this code. In any case where one of the parties demonstrates, and the court finds, that there is good cause not to require immediate income withholding, or in any case where there is filed with the court a written agreement between the parties which provides for an alternative arrangement, such order shall not provide for income withholding to begin immediately.

(2) The order shall also provide that income withholding will begin immediately upon the occurrence of any of the following:

(A) When the payments which the obligor has failed to make under the order are at least equal to the support payable for one month, if the order requires support to be paid in monthly installments;

(B) When the payments which the obligor has failed to make under the order are at least equal to the support payable for four weeks, if the order requires support to be paid in weekly or biweekly installments;

(C) When the obligor requests the child advocate office to commence income withholding; or

(D) When the obligee requests that such withholding begin, if the request is approved by the court in accordance with procedures and standards established by rules and regulations promulgated by the director of the child advocate office.

The Petitioner contends that she is entitled to an order of withholding against the obligor under subsection (b)(2)(A), providing that income withholding is to begin immediately when the payments the obligor has failed to make are at least equal to the support payable for one month, where the order requires support to be paid in monthly installments. Subsection (c) then provides as follows: "For the purposes of this section, the number of days support payments are in arrears shall be considered to be the total cumulative number of days during which payments required by a court order have been delinquent, whether or not such days are consecutive." The Petitioner contends that when read in conjunction with subsection (c), subsection (b)(2)(A) would require income withholding because the obligor's frequency of late payments, when viewed cumulatively, amount to the minimal statutory days required to initiate withholding.

■ We do not agree with the Petitioner's interpretation and do not believe that wage withholding under subsection (b)(2)(A) can be achieved under the circumstances of this case. Subsection (c) is a definitive paragraph which attempts to explain the intent of the phrase "number of

days support payments are in arrears." However, there is no reference elsewhere in the statute to "number of days support payments are in arrears." Such language did exist, however, in a previous version of the statute. Prior to the most recent changes to subsection (b)(2)(A) and (B), they read as follows:

(A) When the support payments required by such order are thirty days or more in arrears if the order requires payments to be made in monthly installments;

(B) When the support payments required by such order are twenty-eight days or more in arrears if the order requires payments to be paid in weekly or biweekly installments.

Thus, subsection (c) was directly applicable to the previous subsections (b)(2)(A) and (B) in an attempt to define "number of days" as referenced in subsections (A) and (B). With the changes enacted in 1991, however, subsection (c) is rendered essentially meaningless because it, as a definition of the terms used, is not applicable to any language currently within the statute.

■ Moreover, after analyzing the changes made to subsections (A) and (B) by the most recent amendment, it is clear that the legislature intended to cast delinquency in terms of a monetary amount of delinquency rather than the cumulative number of days late. Thus, this statute is not applicable to an obligor who, although he or she has paid the entirety of the obligation, is simply late on a frequent basis. In order to initiate wage withholding under subsection (b)(2)(A) or (B) of West Virginia Code § 48–2–15b, the obligor must have failed to pay an amount equal to the support payable for one month, where the order calls for monthly installments, or the support payable for four weeks, where the order calls for weekly or biweekly installments.[3] The number of days by which payments have been late is of no relevance as long as the obligor has not failed to

make payments in an amount equal to the support payable for one month or four weeks, as explained in subsection (b)(2)(A) and (B). In the present case, that would require Mr. Paxton to be at least $100 behind in payments. He was not behind in such amount at the time this wage withholding was initiated and therefore would not be subject to wage withholding under subsection (b)(2)(A).

■ However, while the Petitioner is foreclosed from pursuing a remedy under subsection (b)(2)(A), we believe that relief is available to this Petitioner under subsection (b)(1)(B), which provides that income withholding may be ordered, without regard to whether there is an arrearage, when the obligee has applied for services from the Child Advocate Office. The Petitioner did request assistance from the Child Advocate Office in obtaining the child support payments from her former husband in a consistent, timely fashion. Consequently, income withholding under subsection (b)(1)(B) is appropriate. However, that subsection further provides that if "one of the parties demonstrates, and the court finds, that there is good cause not to require immediate income withholding ... such order shall not provide for income withholding to begin immediately." W.Va. Code § 48–2–15b(b)(1)(B).

We grant the Petitioner's writ of prohibition to prevent enforcement of the stay under the facts presently known. However, since the income withholding was properly initiated under subsection (b)(1)(B), the obligor should be given the opportunity to present, if he desires, evidence of good cause not to require withholding. As we stated in *Pyle,* "[u]pon a finding of good cause, the court may issue an order staying withholding under the first two provisions [subsections (b)(1)(A) and (B)]." 186 W.Va. at 180, 411 S.E.2d at 699.

---

**3.** Any contrary reading of the statute which may have been implied by our paraphrasing of the statute in *Pyle v. Sommerville,* 186 W.Va. 177, 411 S.E.2d 696 (1991) is not acceptable. In *Pyle,* we paraphrased subsections (b)(2)(A) and (B) as follows: "When the obligor is at least one

month behind in support payments." *Id.* at 179, 411 S.E.2d at 698 and syllabus. While that summary is essentially accurate, it is not complete and is susceptible to the false interpretation that 30 days cumulative lateness would activate enforcement under this statute.

**430**

We would caution the lower courts, however, that a stay of execution of a wage withholding initiated as an aid to the collection of child support under these circumstances should be granted very cautiously. The tenor of both federal and state law dictates that child support enforcement should be given a high priority by the courts. A custodial parent should have the right to receive court-ordered child support in a timely fashion, so that the basic needs of the child are able to be met in a consistent and orderly fashion. The fact that a wage withholding may create an inconvenience or embarrassment to the obligor is generally an insufficient reason to stay the execution of the withholding in the instance of a support obligor who is chronically late in making payments.

Writ granted.