Frank E. **SHIPLEY**, Plaintiff and Appellee,

v.

Conchita P. **SHIPLEY**, Defendant and Appellant.

Civ. No. 930145.

Supreme Court of North Dakota.

Dec. 2, 1993.

Donald L. Peterson (argued), McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellee.

Richard B. Baer (argued), Richard B. Baer, P.C., Bismarck, for defendant and appellant.

LEVINE, Justice.

Conchita Shipley appeals from an amended judgment modifying child and spousal support obligations of Frank Shipley, failing to require immediate income withholding by Frank's employer, and refusing to hold Frank in contempt of court. We affirm in part, reverse in part, and remand for further proceedings.

Conchita and Frank were divorced on August 5, 1985. Pursuant to their stipulation, the divorce decree awarded Conchita custody of their four daughters, subject to reasonable visitation by Frank; ordered Frank to pay $1,000 per month in child support for one year and $2,000 per month thereafter; and ordered Frank to pay "spousal support health insurance for a period of six months commencing on August 15, 1985 and the sum of One Thousand Dollars ($1,000.00) per month commencing on August 15, 1985 both earlier terminating upon the following contingencies, whichever shall occur first, the death of either party or the remarriage of" Conchita.

In December 1992, Conchita moved to amend the judgment to increase Frank's child support obligation. She filed a form affidavit in which she disclosed her financial status. Although she had not remarried, one of the preprinted captions of the affidavit stated: "debts of my self *and my spouse.*" (Emphasis added). In response, Frank stopped paying spousal support, and Conchita thereafter moved to have Frank held in contempt of court.

After a hearing, the trial court increased Frank's child support obligation to $3,511 per month, effective from January 1, 1993, until the oldest child graduated from high school in June 1993, and thereafter to $3,165 per month. The court not only refused to hold Frank in contempt but also terminated his spousal support obligation, effective June 1, 1993. After the court denied Conchita's request for reconsideration, she appealed.

I. CHILD SUPPORT

Conchita asserts that the trial court erred in calculating Frank's income under the child support guidelines in N.D.A.C. ch. 75–02–

04.1. She argues that the court erred in not including some employer benefits in Frank's gross income, deducting employer-paid health insurance premiums from Frank's net income without including those amounts in his gross income, and using incorrect income tax deductions to calculate Frank's net income. She also contends the court erred in not allowing her to supplement the record with additional documentation of Frank's income.

■ Section 14–09–09.7(3), N.D.C.C., establishes "a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines is the correct amount of child support." The presumptive amount of child support is a scheduled amount, which is based upon the "obligor's monthly net income and the number of children for whom support is being sought." N.D.A.C. § 75–02–04.1–10. Under the guidelines, the obligor's net income is computed by first determining gross income and then subtracting the items listed in N.D.A.C. § 75–02–04.1–01(4).[1] Gross income is broadly defined under N.D.A.C. § 75–02–04.1–01(2) to mean

"income from any source, including salaries, wages, overtime wages, commissions, bonuses, deferred income, dividends, severance pay, pensions, interest, trust income, annuities income, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, retirement benefits, veterans' benefits (including gratuitous benefits), gifts and prizes to the extent each exceeds one thousand dollars in value, spousal support payments received, cash value of in-kind income received on a regular basis, income imputed from assets, and net income from self-employment, but excluding benefits received from means tested public assistance programs such as aid to families with dependent children, supplemental security income, and food stamps."

The trial court's computations[2] indicate that it determined Frank's net monthly income from a "statement of earnings and deductions" issued by his employer, the Medical Arts Clinic in Minot. According to that statement, Frank's gross "earnings" as a physician at the clinic for a two-week pay cycle were $7,019.16, and, after deductions for Federal Insurance Contributions Act (FICA) and for federal and state income taxes, his "net pay" for a two-week period was $4,215.46. Using that figure, the court calculated Frank's yearly and monthly "net pay," deducted $460 per month for health insurance provided by the clinic and added $585 per month for imputed income to arrive

---

1. N.D.A.C. § 75–02–04.1–01(4) defines "net income" as "total gross monthly income less:"

"a. Federal income tax obligation based on application of standard deductions and tax tables.
"b. State income tax obligation based on application of standard deductions and tax tables.
"c. Federal Insurance Contributions Act (FICA) deductions or obligations, whichever is less.
"d. That portion of premium payments for health insurance policies or health service contracts intended to afford coverage for the child or children for whom support is being sought, and payments made on actual medical expenses of the child or children for whom support is being sought.
"e. Payments actually made pursuant to a child support order, issued by a court or other governmental agency with authority to issue such orders, with respect to a child for whom support is not being sought in the proceeding before the court.
"f. Union dues where required as a condition of employment.

"g. Employee retirement contributions, other than FICA, where required as a condition of employment.
"h. Employee expenses, incurred on a regular basis, but not reimbursed by the employer, for special equipment or clothing required as a condition of employment."

2. In determining Frank's child support obligation, the court found:

"[Frank's] income for a two week period is $4,215.46. That sum multiplied by 26 equals $109,601.96 per year. That sum divided by 12 equals $9,133.50 per month. From that sum, the Court deducts the amount of $460.00 per month for health insurance benefits, including dental, [Frank] provides for his family, thus leaving a net balance of $8,673.50 per month.
"To the sum of $8,673.50, the Court adds to that sum the amount of $585.00 per month. This amount represents imputed income from $117,000.00 worth of [Frank's] assets times 6 percent.
"The net result is a net monthly income to [Frank] of $9,258.00 rounded to $9,300.00 per month per the Guidelines."

at his net monthly income of $9,300. The court then determined the scheduled amount of child support for that net monthly income and four children.

■ However, Conchita also presented evidence that the clinic contributed about $25,000 a year to a pension plan for Frank. That contribution, plus the family health insurance premiums provided by the clinic constitute "income from any source" under the broad definition of "gross income" in N.D.A.C. § 75–02–04.1–01(2). The trial court erred in not including those amounts in Frank's "gross income." In computing "net income," N.D.A.C. § 75–02–04.1–01(4)(d) and (g) allow deductions from gross income for "[t]hat portion of premium payments for health insurance policies or health service contracts intended to afford coverage for the child or children for whom support is being sought" and "[e]mployee retirement contributions, other than FICA, where required as a condition of employment." *Hallock v. Mickels*, 507 N.W.2d 541 (N.D.1993).

■ During closing argument to the trial court, Conchita asked to supplement the record with further documentation about the exact amount of the clinic's contribution to Frank's pension plan. According to the clinic's administrator, that information was readily available. Although we do not condone the parties' initial failure to fully present that information at the hearing, we decline to visit that failure on their children. *Cf., Spilovoy v. Spilovoy*, 488 N.W.2d 873, 877 (N.D.1992) ["Although a custodial parent may have a representational right to collect support on behalf of a child, the right to the support actually belongs to the child."] Accurate information about Frank's pension was necessary to correctly determine his gross income and net income. Under these circumstances, the trial court should have required the parties to supply that information to determine the exact amount of the clinic's contribution to Frank's pension and whether it qualified for deduction from his gross income under N.D.A.C. § 75–02–04.1–01(4)(g). *Cf., Delorey v. Delorey*, 357 N.W.2d 488 (N.D.1984) [remand for retrial of property division where parties did not introduce evidence of present value of military retirement account].

■ Conchita also testified that their four children were not receiving coverage under Frank's family health insurance. Frank had remarried and, at a minimum, his family health insurance covered his second wife and her two children from a previous marriage. However, the evidence is not clear about the pro rata share of health insurance premiums, or the extent of coverage for the children for whom support was being sought. Under the definition of net income in N.D.A.C. § 75–02–04.1–01(4)(d), Frank may deduct from his gross income only that portion of health insurance premiums intended to afford coverage for the children for whom support is being sought. *Hallock*.

■ For purposes of federal and state income tax withholding, Frank claimed single marital status and no dependents on his "statement of earnings and deductions" from the clinic. N.D.A.C. § 75–02–04.1–01(4)(a) and (b) require application of "standard deductions and tax tables" for determining "net income" under the child support guidelines, and Frank was not automatically entitled to deduct the actual amount of federal and state taxes that he designated to be withheld. *Hallock*. He is only entitled to subtract that amount to be withheld under standard deductions and tax tables.

We conclude the trial court failed to properly calculate Frank's gross income and net income under the child support guidelines. Accordingly, we reverse the court's computation of Frank's child support obligation, and we remand to supplement the record and recompute his obligation under the definitions of gross income and net income in the child support guidelines.

■ Conchita asserts that Frank's child support obligation should have been modified effective December 1, 1992. The effective date for a modification of child support depends upon the facts of each case. *Olson v. Garbe*, 483 N.W.2d 775 (N.D.1992). Conchita's motion to modify child support was served on Frank on December 17, 1992, and was filed with the court on December 29, 1992. Under these circumstances, we cannot

say the trial court erred in modifying Frank's child support obligation effective January 1, 1993.

■ Conchita asserts the trial court erred in failing to require immediate income withholding under N.D.C.C. § 14–09–09.24.[3] The plain language of that statute subjects "each [child support] judgment or order" issued or modified after January 1, 1990, to immediate withholding of the obligor's income, "regardless of whether the obligor's support payments are delinquent," unless the obligor demonstrates and the court finds "good cause not to require immediate withholding." *See Hallock.* "Good cause" is narrowly defined and requires, at a minimum, the court to make a written determination explaining why immediate income withholding is not in the best interests of the child, proof of timely payment of previously ordered support, and the obligor's continuous duty to inform the clerk of court of current and future income payors and any employment-related health insurance.[4] *See Hallock.*

Section 14–09–09.24, N.D.C.C., was enacted in 1989 in response to the Family Support Act of 1988, PL 100–485. The Family Support Act of 1988 was part of federal welfare reform to strengthen child support enforcement and collection efforts "to see that innocent children receive the care they need and deserve and that both parents acknowledge and accept their responsibilities." 134 Cong. Rec. 14895 (June 16, 1988, testimony of Bill Bradley on amendment number 2389 to make immediate income withholding mandatory for all child support orders). Our state withholding law was enacted to conform to the requirements of federal law and to strengthen mechanisms for enforcement of all child support obligations.[5] January 27, 1989 Minutes of Human Services and Veterans Affairs Committee of Senate regarding SB 2245.

In light of those broad objectives, other courts, considering similar statutes, have held that income withholding is mandatory, unless the court finds good cause, *State ex rel. Henson v. Richardson,* 621 So.2d 991 (Ala.1993); that lack of arrearages alone is not good cause for refusing to require immediate income withholding, *Rockland County Dept. of Social Services v. Alexander,* 151 Misc.2d 447, 581 N.Y.S.2d 571 (N.Y.Fam.Ct.

---

**3.** N.D.C.C. § 14–09–09.24 provides:

"1. Except as provided in subsection 2, each judgment or order which requires the payment of child support, issued or modified on or after January 1, 1990, subjects the income of the obligor to income withholding, regardless of whether the obligor's support payments are delinquent.

"2. If a party to a proceeding, who would otherwise be subject to immediate income withholding under subsection 1, demonstrates, and the court finds that there is good cause not to require immediate withholding, or if the parties, including any assignee of support rights, reach a written agreement that provides for an alternative arrangement for assuring the regular payment of child support, the court need not subject the income of the obligor to immediate withholding.

"3. A finding that there is good cause not to require immediate income withholding must be based on at least:

"a. A written determination that, and an explanation of why, implementing immediate income withholding would not be in the best interests of the child;

"b. Proof of timely payment of previously ordered support; and

"c. Requirement that the obligor keep the clerk informed of the name and address of each of the obligor's current and future income payors and of any employment-related health insurance to which the obligor has access.

"4. A written agreement for an alternative arrangement for assuring the regular payment of child support is effective only if the agreement at least, in addition to other conditions the parties agree to:

"a. Provides that the obligor shall keep the clerk informed of the name and address of each of the obligor's current and future income payors and of any employment-related health insurance to which the obligor has access.

"b. Describes the provisions by which regular payment of child support is assured; and

"c. Is reviewed and approved by the court and entered into the court's records."

**4.** Section 14–09–09.24, N.D.C.C., did not initially define "good cause." 1989 N.D.Sess.Laws ch. 148, § 7. In 1991, the Legislature adopted a definition for "good cause" tracking language in proposed 45 C.F.R. § 303.100(B)(2). 1991 N.D.Sess.Laws ch. 152, § 7; January 16, 1991 Minutes of Human Services and Veterans Affairs Committee of Senate regarding Senate Bill 2203.

**5.** Other income withholding statutes applied to delinquent obligors and support orders enforced by child support units under the federal Aid to Families with Dependent Children Act. *Bloom v. Fyllesvold,* 420 N.W.2d 327 (N.D.1988); *see Collins v. Collins,* 495 N.W.2d 293 (N.D.1993).

1992) [statute directing "absence of an arrearage ... shall not constitute good cause"]; and that good cause should be found "cautiously." *State ex rel. Stutler v. Watt,* 188 W.Va. 426, 424 S.E.2d 771, 775 (1992). In *Stutler,* the court reiterated the high priority accorded child support enforcement in federal and state law and explained that good cause to deny immediate income withholding does not exist merely because withholding may inconvenience or embarrass the obligor.

■ Our law embodies a strong public policy favoring adequate support and maintenance of minor children. *Sullivan v. Quist,* 506 N.W.2d 394 (N.D.1993); *Bernhardt v. K.R.S.,* 503 N.W.2d 233 (N.D.1993); *Rueckert v. Rueckert,* 499 N.W.2d 863 (N.D.1993). That strong public policy and the tenor of the federal and state schemes for mandatory and immediate income withholding for each child support order indicate that "good cause" is the exception and should be found "cautiously." *See Stutler,* 424 S.E.2d at 775. As N.D.C.C. § 14–09–09.24(3) specifies, "good cause" to excuse immediate income withholding exists only under the narrow circumstances when immediate income withholding is not in the best interests of the child and when all previously ordered child support has been paid in a timely fashion. The statute plainly requires timely child support payments and courts should not refuse to order immediate income withholding as a reward for complying with our law by making timely payments.

■ In this case, Frank claims Conchita did not seek immediate income withholding until her request for reconsideration. However, immediate income withholding is required for "each ... order which requires the payment of child support," unless the obligor demonstrates, and the court finds, good cause. If the obligor neither raises nor establishes good cause, the court must order income withholding. Here, the trial court failed to order immediate income withholding and did not find good cause. In view of Frank's testimony that he had "not necessarily" made all of his child support payments in a timely fashion, we conclude, as a matter of law, that "good cause" does not exist under N.D.C.C. § 14–09–09.24(3)(b). Immediate income withholding for child support is required under that statute and we reverse the trial court's order to the contrary.

## II. SPOUSAL SUPPORT

Conchita asserts that the trial court erred in modifying Frank's spousal support obligation on its own motion and without adequate notice. Frank responds that the amount of his spousal support obligation was properly before the court in the context of the contempt proceeding.

■ In *Gerhardt v. Robinson,* 449 N.W.2d 802 (N.D.1989), we considered the analogous issue of modifying child support in the context of a contempt proceeding when no prior notice of the claim for modification was given. We held that when adverse parties are not provided with adequate notice of the nature of the claim and the relief sought under Rule 7(b), N.D.R.Civ.P., child support could not be modified at a hearing scheduled only for enforcement. *See also McWethy v. McWethy,* 366 N.W.2d 796 (N.D.1985) ["order granting new trial" made without following settled procedures for notice and opportunity to be heard required reversal]. We observed that the paramount purpose of our procedural rules for motions is to inform a party of the nature of claims brought and relief sought by an adverse party. *Vande Hoven v. Vande Hoven,* 399 N.W.2d 855 (N.D.1987).

■ Here, Frank did not move to modify spousal support under Rule 7(b), N.D.R.Civ.P. Although a trial court has continuing jurisdiction to modify spousal support on a showing of a material change of circumstances, under *Robinson* and *McWethy,* there must be notice and orderly procedure. Here, the trial court's sua sponte determination during the contempt hearing did not provide Conchita with adequate notice and an opportunity to marshal evidence on the issue of modification. Accordingly, we reverse the modification of spousal support.

## III. CONTEMPT

■ Conchita asserts the trial court erred in not holding Frank in contempt of court for his failure to pay spousal support.

In *Spilovoy v. Spilovoy,* 488 N.W.2d 873, 875 (N.D.1992), we outlined the following principles for review of this issue:

> "In a civil contempt proceeding, a complainant must clearly and satisfactorily show that the alleged contempt has been committed.... Civil contempt requires a willful and inexcusable intent to violate a court order.... The matter of determining and dealing with contempt is within the sound discretion of the trial court, and its determination will not be disturbed on appeal absent an abuse of discretion.... An abuse of discretion occurs when a trial court acts in an arbitrary, unconscionable, or unreasonable manner...." [Citations omitted.]

Conchita supported her motion to modify Frank's child support obligation with a supporting affidavit which listed the "debts of my self and my spouse," although she had not in fact remarried. According to Frank, he concluded Conchita had remarried, and he stopped paying spousal support under the provision of the stipulated divorce decree which allowed termination upon Conchita's remarriage.

The trial court found Frank had a right to believe Conchita had remarried, and therefore his failure to pay the stipulated spousal support was not contemptuous. We cannot say the trial court acted arbitrarily, unconscionably, or unreasonably in failing to hold Frank in contempt. The trial court did not abuse its discretion.

The judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

VANDE WALLE, C.J., and MESCHKE, SANDSTROM and NEUMANN, JJ., concur.