1998 ND 178

**John Daniel LAWRENCE, aka, Dan Lawrence, Plaintiff and Appellant,**

v.

**Tina Lucille DELKAMP, Defendant and Appellee.**

**Civil No. 980015.**

Supreme Court of North Dakota.

Sept. 29, 1998.

James J. Coles of Snyder Coles Lawyers, Bismarck, for plaintiff and appellant.

Arnold V. Fleck of Wheeler Wolf, Bismarck, for defendant and appellee.

Candace A. Prigge Assistant Attorney General, Bismarck, amicus curiae.

NEUMANN, Justice.

[¶ 1] John Daniel Lawrence appeals from the district court's judgment increasing the child support payment and affirming the original judgment as amended. We affirm the judgment of the district court.

I

[¶ 2] A child was born in August of 1992 to John Lawrence and Tina Delkamp. Lawrence and Delkamp were never married to each other. On October 9, 1992, the district court entered a stipulated judgment giving custody and care of the child to Lawrence. The judgment also directed no child support be paid to or by either party.

[¶ 3] On May 22, 1995, the district court entered an amended judgment incorporating a child and visitation agreement entered into by the parties subsequent to the first stipulated judgment. The amended judgment gave Delkamp custody of the child, and directed Lawrence to pay $540 per month in child support.

[¶ 4] On June 6, 1996, by stipulation of the parties, the district court entered another judgment amending the May 22, 1995, judgment. This second amended judgment among other things decreased Lawrence's child support obligation to $200 per month.

[¶ 5] On June 30, 1997, Delkamp moved to invalidate Lawrence's child support obligation of $200 per month and set a new obligation consistent with the North Dakota Child Support Guidelines.

[¶ 6] On November 6, 1997, the district court entered judgment amending Lawrence's child support obligation to $942 per month. The district court found Lawrence would earn $59,134 in taxable wages in the following twelve months from his employer Dakota Gasification Company (DGC). In addition, Lawrence would receive $1,106 in interest and dividend income. The district court also found Lawrence would receive other tax-exempt income and benefits: Lawrence's contribution to his 401k plan ($2,347), Lawrence's employer's contribution to the 401k plan ($2,347), medical insurance

premiums paid by DGC ($2,605), dental insurance paid by DGC ($280), life insurance premiums paid by DGC ($50), accidental death and disability insurance premiums paid by DGC ($56), long-term disability insurance premiums paid by DGC ($207), pension fund contribution paid by DGC ($5,535), and Lawrence's contribution to a cafeteria plan offered by DGC to reimburse for medical expenses not covered by insurance ($180). These income deferrals and benefits totaled $13,627.

[¶ 7] The district court found Lawrence was entitled to $16,305 in deductions under the North Dakota Child Support Guidelines. *See* N.D. Admin. Code § 75–02–04.1–01(7). The district court found Lawrence's total gross income to be $73,867. Applying the deductions, the district court calculated Lawrence's net annual income to be $57,562 and his monthly net income to be $4,797. Applying the North Dakota Child Support Guidelines, the district court determined the proper support obligation to be $862 per month. *See* N.D. Admin. Code § 75–02–04.1–10. The district court added one-half of the parties' monthly child care expenses ($80) for a total support obligation of $942 per month. *See* N.D. Admin. Code § 75–02–04.1–09(2)(f).

[¶ 8] Lawrence appeals from the second amended judgment, arguing the district court erred in determining a child support obligation of $942 per month. The Department of Human Services filed an amicus brief in support of Lawrence, arguing the employer benefits were improperly included as gross income, and also arguing that to include them in gross income is inconsistent with the intent of the Department of Human Services.[1]

II

[¶ 9] A district court's determination of child support is a finding of fact which will not be reversed on appeal unless it is found to be clearly erroneous. *See Harty v. Harty*, 1998 ND 99, ¶ 14, 578 N.W.2d 519. A finding of fact is clearly erroneous when it has been induced by an erroneous view of the law, if there is no evidence supporting the finding, or if, after review of all the evidence, the court is left with a definite and firm conviction that a mistake has been made. *Steffes v. Steffes*, 1997 ND 49, ¶ 8, 560 N.W.2d 888.

[¶ 10] Lawrence argues the district court erred in including employer-paid benefits in its calculation of gross income because the North Dakota Child Support Guidelines do not provide for the inclusion of those benefits.

[¶ 11] The child support guidelines are mandatory "presumptively correct" guidelines. *See* N.D.C.C. § 14–09–09.7(3). Therefore, an accurate finding of income is necessary to determining the proper amount of child support under the guidelines. *See e.g., Shaver v. Kopp*, 545 N.W.2d 170, 174–75 (N.D.1996).

[¶ 12] At a minimum, the federal government requires a definition of income, for child support determination, to take into account "all earnings and income of the absent parent." 45 C.F.R. § 302.56(c)(1). "Income" is broadly defined under N.D.C.C. § 14–09–09.10(8) as:

> [A]ny form of payment, regardless of source, owed to an obligor, including any earned, unearned, taxable or nontaxable income, workers' compensation, disability benefits, unemployment compensation benefits, annuity and retirement benefits, but

---

1. We note *Shipley v. Shipley*, 509 N.W.2d 49, 53 (N.D.1993), which first included certain employer benefits in gross income under N.D. Admin. Code § 75–02–04.1–01(2) was decided more than a year before the 1995 Legislative Assembly and three years before the 1997 Legislative Assembly. *Shaver v. Kopp*, 545 N.W.2d 170, 175 (N.D.1996), which also included employer benefits in gross income was issued more than 9 months before the 1997 Legislative Assembly. *See Hassan v. Brooks*, 1997 ND 150, ¶ 7, 566 N.W.2d 822 (holding that the court assumes the legislature acquiesced in our interpretation of the language because the legislature had not amended the language). We also note the Department of Human Services has drafted proposed guidelines which are currently in the rule-making process. This proposed draft contains a provision which seems to allow an obligor to deduct certain employer-paid benefits from gross income. *See* Proposed Amendments to N.D. Admin. Code ch. 75–02–04.1, Child Support Guidelines, July 31, 1998.

excluding public assistance benefits administered under state law.

■ [¶ 13] The North Dakota Child Support Guidelines use the "net income" approach. This does not mean the net income used to determine an obligor's child support obligation will coincide with the net income from a paycheck. Rather, net income under the guidelines refers to the remaining balance once specified deductions are subtracted from the obligor's gross income. Lynne Gold–Bikin & Linda Ann Hammond, *Determination of Income*, in *Child Support Guidelines: The next generation* 29, 32 (U.S. Dept. Human Serv.1994); *see* N.D. Admin. Code § 75–02–04.1–01(7)(a–h).

[¶ 14] The guidelines define gross income under N.D. Admin. Code § 75–02–04.1–01(5), providing:

5. "Gross income" means *income from any source, in any form,* but does not mean benefits received from means tested public assistance programs such as aid to families with dependent children, supplemental security income, and food stamps. *Gross income includes* salaries, wages, overtime wages, commissions, bonuses, *deferred income,* dividends, severance pay, pensions, interest, trust income, annuities income, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, retirement benefits, veterans' benefits (including gratuitous benefits), gifts and prizes to the extent each exceeds one thousand dollars in value, spousal support payments received, cash value of in-kind income received on a regular basis, children's benefits, income imputed based upon earning capacity, military subsistence payments, and net income from self-employment.

(Emphasis added.)

■ [¶ 15] We must use words as they are used in their ordinary sense, absent a contrary intent. *See* N.D.C.C. § 1–02–02. The statutory definition of income includes "any form of payment regardless of source." N.D.C.C. § 14–09–09.10(8). The administrative code defines gross income as "income from any source" and provides a nonexclu-

sive listing of items properly included in gross income. *See* N.D. Admin. Code § 75–02–04.1–01(5).

[¶ 16] Currently, DGC makes premium payments on behalf of Lawrence for dental insurance, life insurance, long-term disability insurance, and accidental death and disability insurance. During the trial, a representative from DGC was asked, "[d]oes . . . John pay any of these premiums," referring to the medical insurance and dental insurance. The witness responded, "No." Similarly, the witness was asked whether Lawrence paid any portion of the long-term disability insurance or the accidental death insurance. Again, the witness responded, "No." Regarding the life insurance premiums, the witness stated, "[t]he company [DGC] pays for two times the employees' annual salary and that premium comes out of the company's pocket to the extent that the premium is paid."

■ [¶ 17] Clearly, DGC was making those payments for Lawrence. As a result, he did not have to spend his own disposable income on them. Under the broad statutory and administrative definition of income and gross income, those payments constitute income properly considered in determining child support. N.D.C.C. § 14–09–09.10(8); N.D. Admin. Code § 75–02–04.1–01(5); *cf. Shaver,* 545 N.W.2d at 175 (holding an employer's contribution to a tax-deferred plan also constitutes income); *Shipley,* 509 N.W.2d at 53 (holding employer contributions to health insurance and pension plans are income under the broad definition of gross income in N.D. Admin. Code § 75–02–04.1–01). Therefore, we find the district court was not clearly erroneous in including these employer-paid benefits in gross income.

[¶ 18] We have previously interpreted gross income under the North Dakota Century Code and the N.D. Admin. Code. In *Shipley,* we determined that under the broad definition of income in N.D. Admin. Code § 75–02–04.1–01(2) an employer's contributions to the obligor's pension fund and employer-paid health insurance premiums both constitute "income from any source." *Ship-, ley,* 509 N.W.2d at 53. Similarly, in *Shaver,* we found an employer's contributions to a

tax-deferred savings plan also constitute "income from any source," under N.D. Admin. Code § 75–02–04.1–01(2). *Shaver*, 545 N.W.2d at 175. We decided there was no principled reason to treat employer contributions to a pension plan differently than employer contributions to a tax-deferred savings plan.[2] *Id.*

[¶ 19] In this case, we have similar employer benefits that were included in the gross income. Under our previous holdings employer contributions to a pension plan, a tax-deferred savings plan, and employer-paid health insurance are all found to be income. *See Shaver*, 545 N.W.2d at 175; *Shipley*, 509 N.W.2d at 53. Here, DGC contributes to Lawrence's pension plan, and to his tax-deferred savings plan (401k), and pays his medical insurance premiums. We hold these employer-paid benefits are the specified "deferred income" and all "income from any source," based on the broad definition of income. *See* N.D.C.C. § 14–09–09.10(8); N.D. Admin. Code § 75–02–04.1–01(5); *Shaver*, at 175; *Shipley*, at 53. Therefore, we find the trial court was not clearly erroneous in including these in gross income.[3]

[¶ 20] Lawrence argues if payments to retirement and pension plans are included in his income now, when they are paid in, they will also be included in his income once again when they are paid out following his retirement. While the possibility seems akin to double taxation, and arguably is unfair, the issue is not presented by the facts in this case, and therefore is not before us.

[¶ 21] The record is silent as to whether Lawrence is vested as to any of his employer's contributions. In child support cases the obligee has the arduous task of discovering all suitable income of the obligor to be used for a child support determination. At the very least the obligee will scrutinize the obligor's income disclosures to ascertain full dis-

closure under the guidelines. We believe it would be unjust to add to this burden the task of determining whether rights have vested in portions of the obligor's income, especially when one considers the information is readily available to the obligor.

### III

[¶ 22] We hold the district court properly included employer-paid benefits as gross income under N.D.C.C. § 14–09–09.10(8) and N.D. Admin. Code § 75–02–04.1–01(5) in determining the proper child support obligation. We affirm the district court's judgment.

[¶ 23] MARING and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 24] I concur in the result reached by the majority opinion. I write separately to emphasize we do not decide the issue of whether or not an employer's contributions under a retirement plan which the employee has no choice to join and from which the employee cannot withdraw, at least without leaving employment, is income for purposes of the guidelines. In *Shaver v. Kopp*, 545 N.W.2d 170 (N.D.1996), the income was deferred income which was deferred at the will of the employee and subject to withdrawal at the will of the employee, although with a penalty for early withdrawal. *Id.* at 175 (noting "record shows Kopp is allowed to withdraw his employer's contributions, as well as his own, at any time, subject to taxes and penalties"). Nor does *Shipley v. Shipley*, 509 N.W.2d 49 (N.D.1993), determine whether payments to a compulsory pension plan to which the employee has no access are income for the purposes of the guidelines. Rather, the contributions were not included by the trial

---

**2.** In *Shaver*, the record clearly showed the obligor could have, at any time, withdrawn his employer's contributions to the tax-deferred savings plan. *Shaver*, 545 N.W.2d at 175.

**3.** The issue of whether a deduction to gross income should apply, based on the portion of health insurance covering Rylan, was not raised on appeal. Therefore, we do not determine

whether employer-paid health insurance premiums, which provide insurance to the child for whom support is being determined, constitute a "portion of premium payments, made by the person whose income is being determined, for health insurance policies or health service contracts" under N.D. Admin. Code § 75–02–04.1–01(7)(d).

court as income because no information was presented but "we decline[d] to visit that failure on [the] children" and we reversed and remanded to supplement the record because accurate information about the employee's pension plan "was necessary to correctly determine [the employee's] gross income and net income" and "to determine the exact amount of the [employer's] contribution to [the employee's] pension and whether it qualified for deduction from his gross income" under the guidelines. *Id.* at 53. On this record we do not know the status of the retirement fund, and I agree with the majority that this was information readily available to Lawrence but which he did not introduce.

[¶ 25] As to the discussion in ¶ 20 concerning whether retirement and pension payments are to be included within income going into the plan as well as coming out of the plan, that issue was of concern to me when this court's opinion in *Shaver* was issued in March of 1996. *Shaver v. Kopp*, 545 N.W.2d 170, 177–178 (N.D.1996) (Vande Walle, C.J., concurring specially) (questioning "[w]hat will happen in those possibly rare circumstances in which the deferred income is withdrawn while the support obligation is still in effect? Will it be considered income going in *and* coming out?").

[¶ 26] As the majority notes these issues were suggested by opinions some time ago. I agree the record before us in this case is not adequate to decide the issues contrary to the trial court decision.

[¶ 27] Finally, I believe vesting in a pension or retirement plan is significant only to the extent it means the funds—employer or employee contributions—are accessible to the obligor. If the funds are vested but not accessible short of leaving employment, I question whether they should be included ·as income for purposes of the guidelines. It would be self-defeating to encourage an employee/obligor to leave employment in order to access funds to pay child support.

[¶ 28] SANDSTROM, J., concurs.