1999 ND 97

Cecily COOK, f/k/a Cecily Eggers,
Plaintiff and Appellee,

v.

Rolf E. EGGERS, Defendant
and Appellant.

No. 980339.

Supreme Court of North Dakota.

May 24, 1999.

Sherry Mills Moore, Foss and Moore, Bismarck, N.D., for plaintiff and appellee.

Leslie Bakken Oliver, Kapsner and Oliver, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Rolf Eggers appealed from an amended divorce judgment requiring him to pay past due spousal support and visitation transportation expenses and ordering Egger's ex-wife, Cecily Cook, to pay child support. We hold the trial court misapplied the child support guidelines in determining Cook's net income for computing her child support obligation. We affirm in part, reverse in part, and remand for further proceedings.

[¶ 2] Eggers and Cook were married in 1991 and have one son, Conrad, who was born in 1992. On March 27, 1996, Eggers and Cook were divorced. The divorce judg-ment, which was based upon a stipulated agreement, awarded the parties shared physical custody of Conrad until he entered kindergarten in September 1997, at which time Eggers became the custodial parent, and Cook was awarded liberal visitation. Neither party was ordered to pay child support. At the time of the divorce, the parties anticipated Cook would move from the Bismarck–Mandan area, and the judgment provided Eggers would pay one-half of Cook's transportation costs for visitations with Conrad after she moved.

[¶ 3] In May 1997, Cook moved with her boyfriend, James Fonseca, to Denver, and then, a few months later, to Las Vegas, where the two currently reside. Eggers stopped making spousal support payments after July 1997, and in October 1997 Cook filed a motion requesting an income withholding order for Eggers' spousal support obligation. Eggers opposed the motion and filed a cross motion requesting the court to establish child support. After an evidentiary hearing, the trial court ordered Eggers to pay past due spousal support and one-half of Cook's transportation expenses for visitations with Conrad. The court also ordered Cook to pay child support in the amount of $207 per month. Eggers appealed.

[¶ 4] Eggers contends the trial court erred in determining Cook's income under the child support guidelines for purposes of establishing her child support obligation. In *Buchholz v. Buchholz*, 1999 ND 36, ¶¶ 11–12, 590 N.W.2d 215, we set forth our standard for reviewing trial court awards of child support:

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the Guidelines....

> As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support. *Berg v. Ullman ex rel. Ullman*, 1998 ND

74, ¶ 18, 576 N.W.2d 218. "A proper finding of net income is essential to a determination of the correct amount of child support under the guidelines." *Schleicher v. Schleicher*, 551 N.W.2d 766, 769 (N.D. 1996). N.D. Admin. Code § 75–02–04.1–02(10) requires "a child support order include a statement of the obligor's net income and 'how that net income was determined.'" *Id.*

The definition of gross income under the guidelines is very broad:

*"Gross income"* means income from any source, in any form, but does not mean benefits received from means tested public assistance programs such as aid to families with dependent children, supplemental security income, and food stamps. *Gross income includes* salaries, wages, overtime wages, commissions, bonuses, deferred income, dividends, severance pay, pensions, interest, trust income, annuities income, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, retirement benefits, veterans' benefits (including gratuitous benefits), *gifts and prizes to the extent each exceeds one thousand dollars in value, spousal support payments received, cash value of in-kind income received on a regular basis,* children's benefits, *income imputed based upon earning capacity,* military subsistence payments, and net income from self-employment.

N.D. Admin. Code § 75–02–04.1–01(5) (emphasis added). This definition provides a nonexclusive listing of sources and forms of income included in determining an obligor's gross income. *Lawrence v. Delkamp*, 1998 ND 178, ¶ 15, 584 N.W.2d 515.

[¶ 5] The guidelines also define in-kind income:

"In-kind income" means the receipt of any valuable right, property or property interest, other than money or money's worth, including forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than the customary charge, and the use of consumable property at no charge or less than the customary charge.

N.D. Admin Code § 75–02–04.1–01(6).

[¶ 6] The guidelines require the court to consider net income received by an obligor from all sources in determining the child support obligation. N.D. Admin. Code § 75–02–04.1–02(3). Imputed earnings and other sources of income, including in-kind income, must be considered in determining an obligor's gross income. *See Edwards v. Edwards*, 1997 ND 94, ¶¶ 5–7, 563 N.W.2d 394. Specified deductions are then subtracted from gross income to obtain the obligor's net income, upon which the child support amount is determined. N.D. Admin. Code § 75–02–04.1–01(7).

[¶ 7] At the time of these proceedings, Cook was not working but was taking some college courses in Las Vegas. Based upon Cook's past work history, the trial court imputed earnings to her under N.D. Admin. Code § 75–02–04.1–07(3), then added her spousal support, subtracted her allowable deductions, and determined her annual net income was $10,852, resulting in a child support obligation of $207 per month. Eggers asserts Cook has additional sources of income, including in-kind income, which the court should have considered in arriving at Cook's income for child support purposes.

[¶ 8] Cook testified she receives from Fonseca about $200 to $250 per week as spending money for household expenses. She also testified she lives rent free in a 3,000 square foot home purchased by Fonseca for $366,000. Cook testified Fonseca pays for her vehicle insurance, health insurance, college tuition and fees, and has paid for trips taken by Cook to Europe and Mexico. Eggers introduced, without objection by opposing counsel, an exhibit based upon Cook's deposition testimony, itemizing Cook's in-kind income. The guidelines unambiguously require the court to consider other income sources, in addition to imputed income based upon earning capacity, including gifts which exceed $1,000 each and the cash value of in-kind income received on a regular basis. The trial court, however, did not consider Cook's in-kind income in determining her child support obligation.

[¶ 9] Cook contends the in-kind income she receives from Fonseca should not be considered in determining her child support obligation, because in-kind income received from a spouse is not included. The guideline's definition of income is very broad and is intended to include any form of payment to an obligor, regardless of source, which is not specifically excluded under the guidelines. *See Otterson v. Otterson,* 1997 ND 232, ¶ 17, 571 N.W.2d 648. Prior to 1995, the guidelines specifically provided that the value of in-kind income contributed by a spouse to the obligor must be considered in computing the obligor's child support obligation. N.D. Admin. Code § 75–02–04.1–08. The guidelines were amended in 1995 and that language was deleted from the provision. In *Otterson,* at ¶ 23, we construed the 1995 amendments to exclude from an obligor's gross income any in-kind income received from a spouse. However, *Otterson* is not applicable here.

[¶ 10] Although they reside together, Cook and Fonseca are not married. Consequently, Cook cannot avail herself of the exclusion of in-kind income from a spouse in calculating her child support obligation. Because Cook is not married, the general definitions of gross income and in-kind income under the guidelines apply. Under those guideline provisions, in-kind income received by Cook on a regular basis must be considered by the trial court in determining her net income for purposes of calculating her child support obligation. Also, gifts received by Cook each exceeding $1,000 and monetary income she receives "from any source" must be considered.

[¶ 11] We conclude the trial court misapplied the guidelines by failing to consider all of Cook's gross income in determining her child support obligation. The trial court must, therefore, redetermine Cook's net income and her child support obligation. The court can make its redetermination based upon the record evidence, or, in its discretion, the court may receive additional evidence on this issue.

[¶ 12] Eggers claims the trial court erred in excluding expert testimony of a real estate agent about Cook's in-kind income. The admission of expert testimony is governed by N.D.R.Ev. 702, which envisions generous allowance of the use of expert witnesses who are shown to have some degree of expertise in the relevant field. *State v. Trosen,* 547 N.W.2d 735, 739 (N.D.1996). However, the decision whether to allow expert testimony rests within the discretion of the trial court and will not be overturned on appeal unless the court has abused its discretion. *See, e.g., Kluck v. Kluck,* 1997 ND 41, ¶ 12, 561 N.W.2d 263.

[¶ 13] Eggers called Helen Tracy, a licensed realtor for over 20 years, to testify about the reasonable rental value of a home similar to Fonseca's home in Las Vegas, Nevada. Cook objected to Tracy's opinion testimony on the ground that a proper foundation had not been laid and on hearsay. The trial court sustained the objection. Eggers then made the following offer of proof:

Q. (MS. OLIVER CONTINUING) Ms. Tracy, were you able to determine what the fair market rental value of a large, four-bedroom home in the Tucson Ridge gated community in Las Vegas is?

A. I have one example here, yes, I do.

Tracy had previously testified she was not familiar with real estate in the Las Vegas area, had no independent knowledge of the value of rental property in Las Vegas, and was relying on rental values secured over the Internet from another realty company. An exhibit, also not admitted, apparently showing this information listed one comparison property. In the offer of proof, Tracy further revealed she was relying on "one example." Under these circumstances, we are not persuaded the trial court abused its discretion in refusing to allow Eggers' expert witness to give opinion testimony for lack of proper foundation to support the testimony.

[¶ 14] Eggers contends the trial court's order requiring Eggers to pay one-half of Cook's visitation travel expenses is clearly erroneous. He claims the parties intended Cook would move to the Minneapolis area and he was willing to pay one-half of her visitation expenses from that location to Bismarck. He asserts the parties never envisioned Cook would move to Nevada or that he would pay one-half of her expenses from that location.

[¶ 15] Assessment of transportation costs against either party for facilitating visitation is a necessary incident to the issue of visitation rights. *Vande Hoven v. Vande Hoven*, 399 N.W.2d 855, 859 (N.D.1987). The visitation provision, which was included in the original divorce decree and was based upon the parties stipulation, provides "[o]nce [Cook] moves from the Bismarck–Mandan area, [Eggers] and [Cook] will divide equally the costs of transportation for visitation." When a judgment is unambiguous its interpretation presents a question of law for the court. *Anderson v. Anderson*, 522 N.W.2d 476, 478 (N.D.1994). This provision is clear and unambiguous. The provision contains no location limitations on Cook's travel for visitation or on Eggers' obligation to pay one-half of the travel expenses.

[¶ 16] Eggers also asserts the judgment only provides for a maximum of six visitations between Cook and Conrad in a calendar year, but the court's award of visitation expenses is erroneously based upon eight visitations. The specific visitation language under the decree is very broad. We disagree with Eggers assertion the visitation schedule limits Cook to six visits per year. We are not convinced the trial court made a mistake, and we conclude, therefore, the trial court's assessment of travel expenses against Eggers is not clearly erroneous.

[¶ 17] We affirm the award of visitation expenses, reverse the child support award, and remand for further proceedings for the court to redetermine Cook's child support obligation.

[¶ 18] VANDE WALLE, C.J., NEUMANN and SANDSTROM, JJ., and LAWRENCE A. LeCLERC D.J., concur.

[¶ 19] LAWRENCE A. LeCLERC, D.J., sitting in place of KAPSNER, J., disqualified.