910 A.2d 621 (2006)
389 N.J. Super. 1
Lydia FORRESTALL, Plaintiff-Appellant,
v.
Michael S. FORRESTALL, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 23, 2006.
Decided November 28, 2006.
*622 Levine & Baldinger, attorneys for appellant (Bruce E. Baldinger, on the brief).
Steven H. Fleischer, Somerville, attorney for respondent (Mr. Fleischer, on the brief).
Before Judges LINTNER, S.L. REISNER and SELTZER.
The opinion of the court was delivered by
SELTZER, J.A.D.
Plaintiff, Lydia Forrestall, appeals from a December 14, 2005, order denying her motion for reconsideration of an October 28, 2005, order that modified the child support obligation of defendant, Michael S. Forrestall. We affirm.
The parties were married on November 14, 1992, and divorced on March 27, 2001. The Dual Judgment of Divorce incorporated a Property Settlement Agreement requiring defendant to pay $555 monthly to plaintiff for support of the two children born of the marriage. The agreement also required that, on April 15 of each year, the parties would "exchange evidence of their income including their updated W-2 as well as evidence of their bonus income." Child support would then "be modified pursuant to the child support guidelines based upon the then current income of the parties."
On September 23, 2005, plaintiff moved for a modification of the child support and for fees. On October 28, 2005, support was modified for the period beginning May 1, 2004 through April 30, 2005, and from May 1, 2005, forward. The court computed defendant's support obligation for the period starting May 1, 2004, after considering his income for 2003 as revealed by the exchange of income information on April 15, 2004; and for the period beginning May 1, 2005, after considering his income for 2004 as revealed by the exchange of income information on April 15, 2005.
The judge excluded from the computation of defendant's income, used to determine his support obligation, both the contribution of defendant's employer to defendant's voluntary 401(k) plan and any income generated by that plan. The judge also excluded a bonus that was declared in 2004, but not paid to defendant until some time in 2005, from the computation of defendant's 2005 support obligation. Plaintiff sought reconsideration, which was denied on December 14, 2005.
Plaintiff appeals from the order denying reconsideration, asserting that the trial court failed to consider, as untimely filed, submissions made by her on the original motion; failed to include the bonus received by defendant in 2005 in computing his 2005 income for support purposes; and *623 failed to include either the increase in the corpus of defendant's retirement plan or his employer's contribution to that plan in computing defendant's income for support purposes.[1]
The first and second arguments raised by plaintiff have insufficient merit to justify discussion in a written opinion. R. 2:11-3(e)(1)(A) and (E). As to the first argument, we add only that the motion judge ultimately agreed that any relevant arguments raised in the untimely filed papers would be considered on the motion for reconsideration. Any prejudice that might have been occasioned was thereby cured.
As to the second argument, we agree with the judge's determination that the Property Settlement Agreement provided for the recalculation of child support each year based upon the income from the preceding year as disclosed on April 15. There is no authority for, or logic in, utilizing a bonus declared, but not received, in 2004 to compute child support for the period commencing May 1, 2005. Rather, the income received in 2005, including the bonus, would be used to compute support for the period commencing May 1, 2006. The judge's treatment of this issue was correct.
We turn then to consider plaintiff's claim that employer contributions to defendant's 401(k) plan and the income generated by that plan, although not distributed to defendant, should have been included in defendant's income for child support purposes. We take the question of whether such income may be included for computing support to be a purely legal one. Therefore, we decide the question de novo without according any deference to the motion judge's decision. Balsamides v. Protameen Chems., Inc., 160 N.J. 352, 372, 734 A.2d 721 (1999); Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
The parties' agreement required that defendant's support obligation be computed in accordance with the Child Support Guidelines. See Child Support Guidelines, Pressler, Current N.J. Court Rules, Appendix IX to R. 5:6A (2007). The guidelines were adopted in response to a federal mandate and were intended to complement N.J.S.A. 2A:34-23(a). See Hoefers v. Jones, 288 N.J.Super. 590, 615 n. 7, 672 A.2d 1299 (Ch.Div.1994), aff'd o.b., 288 N.J.Super. 478, 672 A.2d 1177 (App.Div. 1996). As a general rule, the guidelines are now used to compute a support obligation when the combined parental net weekly income does not exceed $2900. N.J.S.A. 2A:34-23(a) provides the criteria for fixing support when the guidelines do not apply. The guidelines apply here both by virtue of the parties' agreement and their income. Plaintiff does not contend otherwise on this appeal.
The guidelines use economic data to determine the percentage of income available for the support of children of intact families. Caplan v. Caplan, 182 N.J. 250, 264, 864 A.2d 1108 (2005). The combined income is utilized to determine the amount of the support, which is then allocated between the parents "in proportion to their relative incomes. . . ." Ibid.
"The procedure for using the charts is now set forth in a series of eight appendices. . . ." 2 Gary N. Skoloff & Laurence J. Cutler, New Jersey Family Law Practice, *624 § 5.4C(1) at p. 5:118 (12th ed.2006). "The guidelines contained in Appendix IX of the Rules of Court consist of narrative considerations and charts for the determination of the amount or percentage of the support for the children for which each parent is responsible." Ibid.
Appendix IX-B deals with the sources of income that should be attributable to a parent when computing that parent's support obligation. It contains a non-exclusive list of income sources, such as "compensation for services, including wages, fees, tips, and commissions" and "gains derived from dealings in property," appropriate for use in computing the income available for support. Pressler, supra, Appendix IX-B to R. 5:6A at p. 2242. The list also includes "annuities or an interest in a trust" and "profit sharing plans." Id. at 2242-43. This list would encompass an employer's contribution to a 401(k) plan as income because the contribution is "compensation for services," and the increase in the plan corpus would constitute both "an interest in a trust" and "gains derived from dealings in property."
The list of income sources, however, is subject to the narrative that proceeds it. Specifically, the guidelines limit gross income to
all earned and unearned income that is recurring or will increase the income available to the recipient over an extended period of time. When determining whether an income source should be included in the child support guidelines calculation, the court should consider if it would have been available to pay expenses related to the child if the family would have remained intact.
[Id. at 2242.]
The motion judge recognized that, once deposited in a 401(k) plan, funds may not be removed without substantial "penalties and taxes." He was correct. In addition to the tax required to be paid, an early distribution is subject to an additional tax of 10% of the amount distributed. 26 U.S.C.A. § 72(t)(1). The judge refused to consider either the employer's contribution or the accretion of the plan corpus as income, explaining that "[r]equiring the income that is generated through this sheltered program to become part of a child support award would punish the father for investing wisely to secure a stable retirement. . . ." Accordingly, he determined that "the assets in the 401(k) [are neither] a source of income [n]or . . . an asset that is in and of itself available for [defendant]."
On reconsideration, the judge maintained his decision and added that the assets in the 401(k) "would only become available to an intact family in the event of extreme financial distress due to the heavy tax penalty of withdrawing these funds early." The judge concluded that the income from the asset would not have been "available" within the meaning of the guidelines and declined to consider it when determining defendant's income. We agree with that analysis. While the monies in the plan may be accessed by defendant, the heavy tax burden imposed on an early withdrawal insures, as a practical matter, that withdrawal in the ordinary course would be, as the judge noted, an unlikely occurrence. It is not, therefore, income that is in any meaningful sense, "available to the [defendant] over an extended period of time." Pressler, supra, Appendix IX-B to R. 5:6A at 2242.
Moreover, the philosophy of the guidelines is to allow the children "to share in the current income of both parents" and to prevent them from becoming "the economic victims of divorce." Pressler, supra, Appendix IX-A to R. 5:6A P1 at 2217. They should "be afforded the same opportunities available to children in intact families with parents of similar financial means as their own parents." Ibid. The guidelines were never intended to allow children *625 of separated parents a greater share of the combined parental income than would have been utilized for them had there been no separation.
We emphasize that there is no claim that the funds received by defendant and voluntarily contributed to his retirement plan are insulated from consideration as income on which his support obligation is based.[2] Defendant's choice to place money into a retirement fund does not absolve him of the obligation to utilize that income for his children. Once the funds are placed into the account, however, they do not produce income to which defendant has ordinary access. The children of an intact family would not expect to benefit from either the employer's contribution or the accretion to the retirement fund, and plaintiff cannot make that claim here on behalf of her children.
Defendant cites two cases from other jurisdictions that reach a contrary conclusion. See Portugal v. Portugal, 798 A.2d 246 (Pa.Super.Ct.2002); Shipley v. Shipley, 509 N.W.2d 49 (N.D.1993). Those cases, however, were decided under statutory provisions that gave a broad definition of income to be included in computing support obligations. They did not, so far as we can determine, involve a limiting provision such as that contained in our guidelines, requiring inclusion only of income that would be available to children of an intact family unit.
The judge's decision to exclude the 401(k) contributions by defendant's employer and any increase in the 401(k) corpus was correct.
Affirmed.
NOTES
[1] The order denying reconsideration also refused to modify other provisions of the original order. Plaintiff's brief makes no reference to these other provisions. Accordingly, we consider only those arguments briefed by plaintiff. See Liebling v. Garden State Indem., 337 N.J.Super. 447, 465-66, 767 A.2d 515 (App.Div.), certif. denied, 169 N.J. 606, 782 A.2d 424 (2001).
[2] Nor is there a claim that defendant has artificially reduced his salary by arranging for a larger employer contribution to his 401(k) plan.