Brenda SAALFRANK, Appellant,

v.

Scott SAALFRANK, Appellee.

No. 02A04–0803–CV–143.

Court of Appeals of Indiana.

Dec. 31, 2008.

Brenda Saalfrank, Fort Wayne, IN, Appellant pro se.

Heidi K. Koeneman, Christoff & Christoff, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Brenda Saalfrank ("Mother") appeals the trial court's Order regarding Child Support, Modifying Parenting Time, and regarding Contribution to Post–Secondary Education ("Modification Order"). We affirm.

### Issues

Mother presents four issues, which we consolidate and restate as follows:

I. Whether the trial court clearly erred in not modifying child support;

II. Whether the trial court abused its discretion in modifying parenting time; and

III. Whether the trial court abused its discretion in ordering Mother to pay attorney fees to Father.

Meanwhile, Scott Saalfrank ("Father") raises the sole issue of whether he should recover appellate attorney fees.

## Facts and Procedural History

Mother and Father had two children, B.S. born in 1989 and A.S. born in 1992. Their marriage was dissolved in 1998. Mother received custody of their two children, and Father was ordered to pay $195 per week in child support. In 1999, child support was modified to $183 per week. Father also paid $25 per week for the children's health care insurance.

Father moved to Indianapolis in 2001 and then relocated to Dixon, Illinois in 2007 for a higher-paying job. The drive between Dixon and Mother's home in Ft. Wayne is approximately five hours.

Mother, a registered nurse, entered a relationship with a doctor ("Doctor"); they resided together and had two subsequent-born children ("Subsequent Children"). She worked full-time at a hospital through 2002. From 2003 through 2006, she worked part-time for the Doctor, doing collections, bookkeeping, and scheduling. She earned no income in 2007.

Mother and Father each filed a petition to modify parenting time. In addition, Mother filed a petition to modify child support, while Father filed a petition for college expenses and a request for sanctions arising from discovery violations.[1]

An evidentiary hearing was conducted on February 5, 2008. After the hearing, the trial court entered its Modification Order and ordered Mother to pay Father $4070 in attorney fees.

Mother now appeals, pro se.

## Discussion and Decision

### I. Child Support

Mother argues that the trial court abused its discretion in not modifying child support. As a general matter, the trial court found that the circumstances had not changed substantially. However, in light of the trial court's findings as to B.S.'s aptitude and ability, the trial court ordered support for his college education expenses. The trial court therefore performed two child support calculations, differing only in whether B.S. attended a "college away from home." Appendix at 14. If so, Father's child support would be reduced to $143 per week, effective September 1, 2008. Otherwise, child support would remain unchanged. In fact, the trial court's updated calculation produced a child support obligation of $183 per week, precisely the same amount Father was already ordered to pay.

■■■ "A trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind.2008). We reverse a decision regarding child support only if it is clearly erroneous or contrary to law. *Id.* We do not reweigh the evidence and consider only the evidence most favorable to the judgment. *Tirey v. Tirey*, 806 N.E.2d 360, 363 (Ind. Ct.App.2004), *trans. denied.* Modification of child support may be made only if the

---

1. On appeal, the parents do not contest the Modification Order's provisions regarding college expenses.

circumstances changed so substantially that the terms became unreasonable or if child support under the existing order differed by more than twenty percent from a calculation of child support under the new circumstances. Ind.Code § 31–16–8–1(b) and Ind. Child Support Guideline 4. As the petitioner, Mother had the burden of establishing that she was entitled to have the child support order modified. *Cross v. Cross*, 891 N.E.2d 635, 641 (Ind.Ct.App. 2008).

Mother does not contest the reduction of child support if B.S. goes to college away from home and, at least on appeal, does not contest her duty to contribute toward B.S.'s college expenses. Her claim is that the trial court made five errors in determining the parents' respective weekly gross incomes and she asks for child support to be reconsidered in light of the five alleged errors.

The following summarizes the trial court's findings and Mother's argument for the parents' respective Weekly Gross Incomes and the Recommended Child Support Obligation:

| | Findings | Mother | Difference |
|---|---|---|---|
| Father's Weekly Gross Income | $1615 | $1712 | ($ 97) |
| Mother's Weekly Gross Income | $1393 | $ 521 | $872 |
| Child Support Obligation | $ 183 | $ 289 | ($106) |

This demonstrates that most of Mother's argument pertains to the calculation of her Weekly Gross Income.

### A. Mother's Potential Earnings

The Indiana Child Support Guidelines provide as follows for potential income and subsequent children:

If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.

Ind. Child Support Guideline 3(A)(3). The Commentary to this Guideline provides that one purpose of imputing potential income to a parent "is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed." Child.Supp. G. 3(A), Commentary 2(c). Furthermore,

When a parent has some history of working and is capable of entering the work force, but voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income should be determined to be a part of the gross income of that parent. The amount to be attributed as potential income in such a case would be the amount that the evidence demonstrates he or she was capable of earning in the past. If for example the custodial parent had been a nurse or a licensed engineer, it is unreasonable to determine his or her potential at the minimum wage level.

*Id.*

[R]egular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, may be the basis for imputing income. The marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income.

Child.Supp. G. 3(A), Comm. 2(d).

Mother worked full-time as a registered nurse at a hospital until 2002, when she

earned $53,081. Because Mother's hospital gave cost-of-living adjustments to nurses, if she had remained employed at the hospital, then her 2007 income would have been at least $60,811. From 2003 through 2006, she worked part-time for the Doctor, performing clerical work. She earned no income in 2007, but her nursing license was still active. Father introduced summaries of nursing positions available in January 2008, compiled by two hospitals. The trial court found Mother to be voluntarily unemployed. While not remarried, Mother, Doctor, B.S., A.S., and the Subsequent Children lived together. Mother did not pay for housing or utilities. Finally, while Mother testified at the hearing that working full-time would cause her to have day-care expenses for her two Subsequent Children, she submitted no evidence regarding the amount of such expenses. She therefore failed to meet her burden of proof as to that assertion. Based upon the evidence, the record contained support for the trial court's decision to include Mother's potential earnings in calculating her Weekly Gross Income.

### B. Mother's Subsequent–Born Children

■ Mother asserts that the trial court erred in not accounting for her two Subsequent Children. Within the calculation, subsequent children are addressed by use of a multiplier that reduces the parent's Weekly Gross Income. Child.Supp. G. 3(A)(4) and Comm. 3. The multiplier varies by the number of subsequent children, for example, .935 for one subsequent child and .903 for two subsequent children. *Id.* There is a rebuttable presumption that the application of the Guidelines produces "the correct amount of child support to be awarded." Ind. Child Support Rule 2. "If the court concludes from the evidence in a particular case that the amount of the *award reached through application of the guidelines* would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion." Ind. Child Support Rule 3 (emphasis added). "Deviation is proper if *strict application of the Guidelines* would be 'unreasonable, unjust, or inappropriate.'" *Garrod v. Garrod,* 655 N.E.2d 336, 338 (Ind.1995) (citation omitted) (emphasis added); *see also Young,* 891 N.E.2d at 1048 (noting that trial court may deviate from the Guidelines based upon its analysis "after calculating" [support]).

Here, the trial court deviated from the Guidelines by concluding that the calculation in this case should not account for Mother's two Subsequent Children. As required, the trial court found and stated in writing its reason for deviating from the Guidelines. However, the trial court changed the calculation itself, by not using the multiplier, rather than performing the calculation as specified and then considering deviation.

While perhaps a technicality, our review reveals no support for deviating from the precise method of the Guideline calculation. To the contrary, the plain language of Child Support Rule 3 indicates that the trial court should perform the calculation to determine a Recommended Child Support Obligation. Only then should the trial court consider deviation. *Garrod* and *Young,* referenced above, reflect the same reasoning. Indeed, to the degree that the Guidelines specify precise and marginally varying factors for subsequent children, it appears that the Guidelines presume an equally precise use of the formula. Although the trial court's reasoning for deviation was supported by the record, the process by which the trial court considered Mother's Subsequent Children was error.

### C. Mother's Rental Income

■ Mother also contests how the trial court calculated her rental income. Weekly Gross Income includes rent and is de-

fined as "gross receipts minus ordinary and necessary expenses." Child.Supp. G. 3(A)(2). Such expenses "should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income." *Id.* The Guidelines do not address whether mortgage interest or property taxes should be deducted from rent.

Mother rented a home to her mother for $675 per month. However, Mother's 2006 income tax return stated that the rent received for that year was $12,300 and that the insurance and association dues together were $660. Upon this evidence, the trial court calculated the annual rental income to be $11,640 or $224 per week.[2] The trial court did not deduct mortgage interest or property taxes.

Mother argues that the trial court should have based its calculation upon the rent actually received from her mother, rather than including any value she gave her mother as a gift. During the hearing, she stated,

> she pays me $675 a month. In order to be able to deduct my expenses I have to claim to the best of my ability what I figure should be the more fair market value. The difference between that is written off as a gift.

Transcript at 57. Mother's 2006 tax return indicated that she considered the fair market value for renting the house to be $1025 per month, rather than the $675 per month she actually received. The Guidelines require that expenses "should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income." Child.Supp. G. 3(A)(2). While making a gift to one's mother is admirable, it does not produce income, it reduces it. The trial court's finding was within the evidence submitted. Accordingly, the trial court did not abuse its discretion by basing its calculation of rental income upon Mother's own estimate of fair market value, rather than an admittedly benevolent transaction with a family member.[3]

Meanwhile, Mother paid $6111 in mortgage interest on the rental property in 2006. The parties dispute whether mortgage interest is an ordinary and necessary expense such that its deduction would be appropriate for determining rental income. As Father acknowledges, in *Zakrowski v. Zakrowski,* 594 N.E.2d 821, 824 (Ind.Ct. App.1992), this Court distinguished between payments of principal and interest for purposes of determining child support. *Zakrowski v. Zakrowski,* 594 N.E.2d 821, 824 (Ind.Ct.App.1992). In *Zakrowski,* the trial court made no deduction for mortgage payments, although the uncontroverted evidence indicated that the payments were for both principal and interest. This Court held that principal payments contributed to a parent's net worth whereas interest payments could be deducted so long as the financing terms were not "excessive." *Id.*

█ Here, the evidence addressed specifically mortgage interest payments. Father does not argue that the terms of Mother's mortgage were excessive or unreasonable. Accordingly, mortgage interest payments should have been considered as a deduction for calculating Mother's rental income.

█ Finally, the same tax return indicated that Mother paid $1467 in property taxes on the rental property. The Guide-

**2.** $12,300 - $660 = $11,640.

**3.** Note that the Guidelines refer to "support for an elderly parent" as an example of a situation that *may call* for deviation from the Guidelines. Ind. Child Support Guideline 1, Commentary 2.

lines allow "reasonable out-of-pocket expenditures necessary to produce income." Child.Supp. G. 3(A)(2). Where language is unambiguous, we apply its plain meaning. *Sees v. Bank One, Indiana, N.A.,* 839 N.E.2d 154, 157 (Ind.2005). It is more than reasonable to pay property taxes; it is necessary. Furthermore, the failure to pay property taxes would result in a sheriff's sale and thereby preclude the production of income. We therefore agree with Mother that her payment of property taxes should have been deducted in calculating her rental income. *E.g., In re Braud,* 45 Cal.App.4th 797, 53 Cal.Rptr.2d 179, 191 (1996).

### D. Father's Employment Benefits

■■■■ Mother asserts that the trial court erred in excluding Father's employment benefits consisting of a potential bonus and his employer's automatic contribution to a Money Purchase Savings Plan. Where a bonus is not guaranteed, the trial court may include it as irregular income. Child.Supp. G. 3(A), Comm. 2(b). "[T]he court should express its reasons" when it excludes a bonus from irregular income. *Id.* Father received an incentive or bonus from his employer in 2006, but not in 2007. The trial court did not include the bonus in Father's income. Although it may have had good reason, the trial court should have stated the basis for its decision to exclude Father's bonus from income.

The final child support issue pertains to Father's Retirement Savings Plan, which consisted of a 401(k) and a Money Purchase Savings Plan. As to the latter, employees were enrolled automatically and the employer made contributions without requiring any employee contribution. Thus, the contributions were made irrespective of Father's wishes or conduct, so long as he continued to be employed with that firm. For the 401(k), Father could contribute funds, so long as the contribution was greater than one percent of his salary. His employer would make a fifty percent match of the employee's contribution.

"[T]he Indiana Child Support Guidelines calculate child support as the share of each parent's income estimated to have been spent on the child if the parents and child were living in an intact household." Ind. Child Support Guideline 1, Preface ("Guideline 1"). Weekly gross income includes income from pensions. Child.Supp. G. 3(A)(1). Income includes withdrawals from retirement accounts made to fund living expenses and lifestyle choices, but not annual returns that are automatically reinvested. Child.Supp. G. 3(A), Comm. 2(e).

■■■■ Very recently, our Supreme Court considered the child support obligation of a self-employed father in *Young v. Young.* The parents derived income from a jointly-owned business. In calculating the father's income for child support purposes, the trial court excluded, among other things, the full extent of the business deductions claimed on the father's tax return, including a $7000 retirement contribution. The *Young* Court cited Guideline 3(A)(2) for the proposition that income from self-employment or a business is "gross receipts minus ordinary and necessary expenses" [or] "reasonable out-of-pocket expenditures necessary to produce income." *Young,* 891 N.E.2d at 1049 (citing Ind. Child.Supp. G. 3(A)(2)). In rejecting all of the reductions, the Supreme Court emphasized that calculating a self-employed parent's income "presents unique problems and calls for careful review of expenses." *Id.* at 1048–49.

Trial courts have discretion in determining which business expenses are deductible for calculating the child support obligation of self-employed persons, but

the court must engage in a careful review of the facts and circumstances in making its determination. The adjusted gross income from a party's tax return is a useful point of reference, but the court must evaluate the deductions taken in arriving at that figure.

In this case, using the adjusted gross income from [the father's] tax return for calculation of his child support obligation was error on multiple grounds.

For example, [the father's] adjusted gross income figure includes a deduction of over $7,000 that [the father] invested in his retirement account. Contributions to retirement accounts are usually a wise move, but they certainly do not qualify as an ordinary and necessary business expense that should be deductible for determining child support.

*Id.* at 1049. Although the *Young* Court ordered the retirement contribution to be included in calculating Father's income for child support purposes, its holding appears to be limited to retirement contributions being characterized as business expenses.

This Court similarly held that the calculation may include a self-employed parent's profit-sharing contribution to a retirement plan. *Haverstock v. Haverstock,* 599 N.E.2d 617, 620 (Ind.Ct.App.1992). The *Haverstock* Court noted that the parent "did not explain whether the plan covered employees as well as officers or whether he could terminate the plan at will." *Id.* Meanwhile, it is clear that the self-employed parent in Young made the investment and therefore controlled its amount.

Many states have analyzed recently whether post-dissolution contributions to retirement plans should be included in calculating income for child support purposes. Courts frequently focused upon the degree to which the employee controlled whether and in what amount the contribution was made. For instance, in *Hetherington v.*

*Hetherington,* 532 Ariz. Adv. Rep. 20, 202 P.3d 481, 487, 2008 WL 2469307 (Ariz.App. Ct., 2008), the trial court did not include as income the parent's employer-paid contributions to a retirement plan. Without ordering a particular result, the *Hetherington* Court remanded for additional fact-finding, including whether the parent could have received salary in lieu of the retirement contribution and whether the employee controlled the amount contributed to the plan. *Id.* at 487. *See also* N.Y. DOMESTIC RELATIONS LAW § 240(1–b)(b)5(iii)(F) (McKinney 2008) (providing that income includes compensation *voluntarily* deferred and placed into pension and retirement plans); *Cerami v. Cerami,* 44 A.D.3d 815, 845 N.Y.S.2d 67, 68 (N.Y.App.Div.2007); and *Forde v. Forde,* 190 S.W.3d 521, 530 (Mo.Ct.App.2006).

One Indiana case, *Summerville v. Summerville,* 679 N.E.2d 1344, 1347 (Ind.Ct. App.1997), contradicts the reasoning of the above cases. In *Summerville,* the U.S. Navy was required to deduct money from the father's paycheck for a retirement plan. On this basis, the father asked for a deviation from the presumptive guideline amount. The trial court did not reduce father's income calculation in light of the retirement contribution. This Court affirmed, stating the "civil service deduction is *simply a form of forced saving which will benefit him in the future.* We cannot conclude that the trial court was required to lower Father's child support obligation on this basis." *Summerville v. Summerville,* 679 N.E.2d 1344, 1347 (Ind.Ct.App. 1997) (emphasis added). Effectively, because the very function of a retirement account is to benefit the parent in the future, the rationale in *Summerville* would require each and every retirement contribution to be included in the calculation, regardless of how the account works. The child support calculation would be based

upon funds accessible, if at all, only upon paying a significant penalty.

Such a rule, however, would contradict the Guideline 1 requirement that child support reflect what the child would have received in an intact household. A child in an intact household could not expect to benefit from contributions to a mandatory retirement plan. We are convinced that the following New Jersey opinion presents a more sensible analysis:

> The [New Jersey] guidelines were never intended to allow children of separated parents a greater share of the combined parental income than would have been utilized for them had there been no separation.

> We emphasize that there is no claim that the funds received by defendant and voluntarily contributed to his retirement plan are insulated from consideration as income on which his support obligation is based. Defendant's choice to place money into a retirement fund does not absolve him of the obligation to utilize that income for his children. Once the funds are placed into the account, however, they do not produce income to which defendant has ordinary access. The children of an intact family would not expect to benefit from either the employer's contribution or the accretion to the retirement fund.

*Forrestall v. Forrestall,* 389 N.J.Super. 1, 910 A.2d 621, 624–25 (2006).

■■■ Thus, we conclude that, in determining whether to exclude retirement contributions, in whole or in part, for purposes of calculating a child support obligation, the trial court should consider:

(1) a parent's control of whether or in what amount a retirement contribution is made;

(2) the parents' established course of conduct in retirement planning (prior to and after the dissolution);

(3) the amount of the contribution (from nominal to a large amount that could suggest the inappropriate sheltering of income);

(4) whether and to what extent there are incentives for the contribution;

(5) whether the contribution qualifies for favorable tax treatment;

(6) whether continuing the contribution, in whole or in part, would otherwise reduce the amount that a child in the intact home could expect to receive; and

(7) any other relevant evidence.

Here, the human resources director of Father's employer sent to Mother a three-page letter detailing the terms of Father's employment. He described the Money Purchase Savings Plan ("MPSP") as follows: "Employees are automatically enrolled in the Money Purchase Savings Plan on their one (1) year anniversary, and the company contributes 6% of employee earnings, and does not require any employee contribution" App. at 60. The MPSP was mandatory, functioned automatically, upon a date certain, in a pre-determined and reasonable amount, and was generally applicable to the company's employees. Therefore, Mother did not establish error in the trial court's treatment of Father's contributions to the MPSP.[4]

E. Consideration of Twenty Percent Change

■■■ We agree with the trial court that the changed circumstances were not so

---

4. Mother did not argue on appeal that Father's contributions to his 401(k) should be included as income. As a result, she waived any argument as to the 401(k) contributions.

*See* Ind. Appellate Rule 46 and *Watson v. Auto Advisors, Inc.,* 822 N.E.2d 1017, 1028 (Ind.Ct. App.2005), *trans. denied.*

substantial as to make the terms of the existing child support order unreasonable. Nonetheless, having concluded that certain elements of the calculation were in error, we still must consider whether revising the calculation would necessarily create a twenty percent change in Father's child support obligation. *See* I.C. § 31–16–8–1(b) and Child.Supp. G. 4. Revising the calculation for Mother's two Subsequent Children and Mother's mortgage interest and property tax payments on her rental property, then the Guideline calculation[5] yields a child support obligation of $204 per week—or $21 per week more than the existing order of $183 per week.[6] $21 is 11.48% of $183. Even if the calculation were further revised to include the entirety of Father's 2006 bonus, even though he received no bonus in 2007, it would make only a 12.57% increase in his child support obligation.[7] Furthermore, as Mother filed her Petition in August 2007, in what appears to have been B.S.'s senior year in high school, the trial court's February 2008 order was, by necessity, ambiguous as to whether B.S. would be attending college, and if so, whether he would attend away from home.[8] Mother has not met her burden in establishing that modification was required.

## II. Parenting Time

 Mother argues that the trial court abused its discretion in modifying parenting time. We reverse a parenting time determination only when the trial court manifestly abuses its discretion. *J.M. v. N.M.*, 844 N.E.2d 590, 599 (Ind.Ct. App.2006), *trans. denied.* "No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination." *Id.* The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. Ind. Code § 31–17–4–2. Where the distance involves extended driving time, the transportation cost should be shared, based upon a consideration of the parents' financial resources, the distance, the reason for the distance, and each parent's family situation. Ind. Parenting Time Guidelines, Sec. I(B)1, Commentary 2.

In light of Father's relocation to Dixon, the trial court modified Father's parenting time to be consistent with Section III(2), Commentary C of the Indiana Parenting Time Guidelines ("Parenting Time When Distance is a Major Factor"), plus eight additional weekends per year. Father was responsible for the parenting time transportation costs, except the additional eight weekends per year, for which Father and Mother were ordered to meet and exchange the children in Merrillville, Indiana—approximately equidistant from Ft. Wayne and Dixon.

While Mother appeals the modification of Father's parenting time, her main concern appears to be the inconvenience of

---

5. For tools to assist in calculating child support, *see* http://www.in.gov/judiciary/childsupport (last visited Oct. 21, 2008).

6. Subtracting mortgage interest and property taxes, Mother's rental income for the year was $4062 or $78 per week. Therefore, Mother's Weekly Gross Income was $1247.

7. His 2006 bonus was $1288 or $25 per week, resulting in a child support obligation of $206 per week. The change, $23, would be 12.57%

of $183, still well below the statutory criterion for modification.

8. Given the lack of evidence regarding the college plan, the trial court simply was forced to address it with a flexible order. Regardless of the status of their litigation, we encourage parents to anticipate the post-high school, educational needs of their children, so that they can cooperate, plan, and present evidence for the trial court's consideration in a timely fashion.

having to make sixteen round-trips per year from Ft. Wayne to Merrillville—Friday and Sunday of eight weekends per year—or approximately eighty hours of driving per year.[9] On appeal, she argues, "the distance makes the order for the extra weekend visitation unreasonable if [Mother] is ordered to provide the transportation." Appellant's Brief at 27.

The Guidelines required the trial court to consider the parents' financial resources, the distance, the reason for the distance, and each parent's family situation. There was evidence that Father's income and Mother's potential income were not identical, but similar. The five-hour distance existed because Father relocated to accept a higher-paying position. Mother had custody of B.S., likely to begin college in Fall 2008, A.S., and her two, young Subsequent Children.

The Indiana Parenting Time Guidelines demonstrate a preference for sharing in transportation costs where the distance between parents is significant. *See* Ind. Par. Time Guidelines, Sec. I(B)1, Comm. 2. Father was responsible for all of the transportation costs related to his parenting time for summer vacation, winter vacation, and spring break. For the other eight exchanges, the parents were ordered to share transportation costs by meeting in Merrillville. Thus, Father was ordered to bear more than half of the costs. While his job was the reason for the distance, the parents' potential annual earnings were similar, especially considering the fact that Mother had no housing costs. The trial court did not manifestly abuse its discretion in ordering the parents to share the transportation costs for eight weekends per year.

In the alternative, Mother argues that the trial court abused its discretion by not providing a written explanation for deviating from the Indiana Parenting Time Guidelines ("Guidelines"). Where the trial court deviates from the Guidelines, it must give a written explanation. Ind. Parenting Time Guidelines, Scope of Application 2. The Commentary to this Section states that the written explanation need not be as formal as a trial court's findings of fact. *Id.* Contrary to Mother's argument, the trial court found that the eight additional weekends of parenting time were in the children's best interest. Mother has not established that the trial court manifestly abused its discretion in modifying parenting time.

### III. Award of Attorney Fees to Father

 Finally, Mother contends that the trial court abused its discretion in ordering her to pay Father $4070 in attorney fees. The trial court may order a party to pay a reasonable amount for attorney fees. Ind.Code § 31–16–11–1(a)(2). In proceedings to modify a child support award, a determination regarding attorney fees is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. *Whited v. Whited,* 859 N.E.2d 657, 665 (Ind.2007). The trial court is in the best position to consider the parties' respective resources, economic condition, and ability to engage in gainful employment. *Id.* The trial court need not cite the reasons for its determination. *Id.* From the record, it appears that the trial court ordered Mother to appear at a deposition and ultimately ordered her to pay precisely half of the attorney fees incurred by Father. Mother has not established that the trial court abused its discretion.

### IV. Appellate Attorney Fees

 Father asks this Court for an award of appellate attorney fees. This

9. (Sixteen round-trips per year) X (five hours per round-trip) = eighty hours per year.

Court may assess damages if an appeal is frivolous or in bad faith. Ind. Appellate Rule 66(E). However, "we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind.Ct.App.2003). Mother's appeal was not made in bad faith; indeed, part of her argument was well taken. We deny Father's request for appellate attorney fees.

### Conclusion

The trial court did not clearly err in declining to modify Father's existing child support obligation. The trial court did not abuse its discretion in determining parenting time or in ordering Mother to pay Father $4070 in attorney fees. Mother's appeal was not frivolous or in bad faith.

Affirmed.

RILEY, J., and MATHIAS, J., concur.