**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CAITLIN M. KING**
Hunt, Hassler & Lorenz LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE: THE MATTER OF THE PATERNITY OF B.G., Minor Child, | ) |
| | ) |
| | ) |
| C.G. (Mother), | ) |
| | ) |
|     Appellant-Petitioner, | ) |
| | ) |
|        vs. | )   No. 77A01-1202-JP-82 |
| | ) |
| R.M. (Father), | ) |
| | ) |
|     Appellee-Respondent. | ) |

APPEAL FROM THE SULLIVAN SUPERIOR COURT
The Honorable Robert E. Springer, Judge
Cause No. 77D01-1108-JP-55

**October 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

C.G. ("Mother") filed a paternity action against R.M. ("Father") on behalf of herself and her infant son, B.G. Genetic testing established Father's paternity, and Father admitted his paternity at a hearing. The trial court issued an order establishing paternity, setting child support, and changing B.G.'s last name to Father's last name. Mother now appeals, challenging the provisions in the order that pertain to Father's income, the parenting time credit, retroactivity of support, and the change of B.G.'s last name. We affirm in part, reverse in part, and remand.

**Facts and Procedural History**

On April 20, 2011, Mother gave birth to B.G. out of wedlock. Four months later, she filed a verified petition to establish Father's paternity. Mother, Father, and B.G. submitted to genetic testing, which indicated with over ninety-nine-percent certainty that Father was B.G.'s father. Father admitted to paternity at a December 2011 hearing.

At the hearing, the Title IV-D Deputy Prosecutor submitted an unsigned, unverified child support worksheet to the court to be attached to the final order. The prosecutor told the trial court that the parties had agreed to Father paying forty-five dollars in weekly child support as indicated on the worksheet. Father's total support obligation included a parenting time credit of $5.76 for fifty-two to fifty-five nights annually. The trial court asked Father if he agreed to pay the forty-five-dollar weekly support obligation; Mother was not asked if she had agreed to accept that amount. The court also addressed the subject of changing B.G.'s last name, and each parent indicated a desire for B.G. to have his/her respective last name.

2

In January 2012, the trial court issued an order establishing paternity, setting Father's weekly child support obligation at forty-five dollars, and changing B.G.'s last name to Father's last name. The order made no provision for retroactivity of the child support obligation. Mother now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Mother contends that the trial court erred in calculating child support, in failing to apply it retroactively, and in changing B.G.'s last name. At the outset, we note that Father has not filed an appellee's brief. When the appellee fails to submit a brief, we use a less stringent standard of review and may reverse if the appellant establishes prima facie error. *In re Paternity of B.N.C.*, 822 N.E.2d 616, 618-19 (Ind. Ct. App. 2005). Prima facie error is error at first sight, on first appearance, or on the face of it. *Id*. at 619. We will not undertake the burden of developing arguments for the appellee. *Id*. The appellee's failure to file a brief does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 725 (Ind. Ct. App. 2009).

*I. Weekly Child Support Award*

*A. Father's Weekly Income*

Mother claims that the trial court erred in ordering child support absent any verified evidence concerning Father's weekly income. A trial court's calculation of child support is presumptively valid, and we will reverse the trial court's decision only if it is clearly erroneous or contrary to law. *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 674 (Ind. Ct. App.

2008). When conducting our review, we do not reweigh evidence; rather, we consider only the evidence most favorable to the judgment. *Id*.

With respect to calculating the amount of child support owed by the noncustodial parent, Indiana Code Section 31-14-11-2 provides in part,

> (a) The court may order either or both parents to pay any reasonable amount for child support after considering all relevant factors, including the following:
>
> (1) The financial resources of the custodial parent.
>
> (2) The standard of living the child would have enjoyed had the parents been married and remained married to each other.
>
> (3) The physical and mental condition of the child.
>
> (4) The child's educational needs.
>
> (5) The financial resources and needs of the noncustodial parent.

Mother essentially claims that the trial court failed to give proper consideration to Father's financial resources by failing to require that he submit a signed worksheet or any other documentation concerning his income. With respect to income verification, Indiana Child Support Guideline 3(B) states,

> 1. *Submitting Worksheet to Court*. In all cases, a copy of the worksheet which accompanies these Guidelines shall be completed and filed with the court when the court is asked to order support. This includes cases in which agreed orders are submitted. Worksheets shall be signed by both parties, not their counsel, under penalties for perjury.
>
> 2. *Documenting Income*. Income statements of the parents shall be verified with documentation of both current and past income. Suitable documentation of current earnings includes paystubs, employer statements, or receipts and expenses if self-employed. Documentation of income may be supplemented with copies of tax returns.

4

Here, the record contains only an unsigned, unverified worksheet submitted by the prosecutor and characterized as "the worksheet that we ran." Tr. at 4. Although it is unclear to whom "we" refers, when taken in context with the prosecutor's statement that the parties had reached an agreement regarding the amount of child support based on that worksheet, a reasonable inference can be drawn that the parties had contributed the information that appeared on the worksheet. Notably, Mother offered no worksheet of her own. The unverified worksheet listed Father's weekly income at $290.00, and used that figure to calculate his weekly child support obligation of $45.00. During the hearing, the prosecutor twice referenced the parties' agreement to a weekly child support amount of $45.00, and he ultimately requested that the unverified worksheet be attached to the final order. Mother neither disputed the prosecutor's statements nor objected to the attachment of the worksheet, and at the end of the hearing, when the trial court specifically asked her if she had any questions, she responded, "No." *Id*. at 7.

In short, Mother tacitly agreed to proceed without verified worksheets from her and Father. *Butterfield v. Constantine*, 864 N.E.2d 414, 417 (Ind. Ct. App. 2007). As such, she invited the error about which she now complains. *See Batterman v. Bender*, 809 N.E.2d 410, 412 (Ind. Ct. App. 2004) ("a party may not take advantage of an error that [s]he commits, invites, or which is the natural consequence of h[er] own neglect or misconduct."). Thus, we

affirm the trial court's determination of Father's income as stated on the unverified worksheet attached to the final order.[1]

## B. Parenting Time Credit

Mother asserts that the trial court erred in giving Father a parenting time credit for overnight visits. We may not reverse a parenting time credit determination unless the trial court manifestly abuses its discretion. *Vandenburgh*, 916 N.E.2d at 727. "No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination." *Saalfrank*, 899 N.E.2d at 681 (citation and quotation marks omitted).

Indiana Child Support Guideline 6 states, "A credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." The parenting time credit computation requires a determination of the annual number of overnights of parenting time exercised by the parent who is to pay child support, with reference to the standard child support obligation worksheet, a parenting time table, and a parenting time credit worksheet. Ind. Child Supp. G. 6, Commentary. The parenting time table begins at fifty-two overnights annually, the equivalent of alternate weekends of parenting time. *Id*.

Here, the trial court awarded visitation rights to Father in accordance with the Indiana Parenting Time Guidelines. However, Mother claims that due to B.G.'s young age, Father was not entitled to overnight visits and therefore was not entitled to a parenting time credit.

---

[1] However, we agree with the *Butterfield* court in "*strongly* … urg[ing] trial courts in the exercise of their discretion to *require* verified child support worksheets in every case. Failure to do so frustrates not only appellate review but also the goals of the child support guidelines." 864 N.E.2d at 417.

Indiana Parenting Time Guideline Section II(A) states in part with respect to infants and toddlers under age three,

> **1. Overnight Parenting Time**. Unless it can be demonstrated that the non-custodial parent has not had regular care responsibilities for the child, parenting time shall include overnights. If the non-custodial parent has not previously exercised regular care responsibilities for the child, then parenting time shall not include overnights prior to the child's third birthday, except as provided below.
>
> ….
>
> Overnight if appropriate under Rule 1 above but not to exceed one (1) 24 hour period per week.

Mother argues that since Father has not previously exercised regular care responsibilities for B.G., he is not entitled to overnight visits until B.G. turns three. We disagree. Father was not legally determined to be B.G.'s father until the date of the instant order. Thus, it is difficult to see how he could be characterized as failing to "previously exercise regular care responsibilities" for B.G. *Id.* The trial court entered the minimum parenting time credit representing fifty-two to fifty-five overnights per year, which is commensurate with the "one (1) 24 hour period per week" specified in the parenting time guidelines. *Id.* As such, the trial court acted within its discretion in giving Father a parenting time credit of $5.76 per week. Thus, we affirm the trial court in this respect.

## II. *Retroactive Child Support*

Although Mother characterizes her next argument as trial court error in failing to order Father to pay a child support *arrearage*, we find that it is more accurately stated as an alleged failure to order him to pay retroactive child support, as required under Indiana Code Section

7

31-14-11-5. The statute reads, "The support order … may include the period dating from the birth of the child; and … *must* include the period dating from the filing of the paternity action." *Id*. (emphasis added). An award of retroactive support for the period dating from the latter of the two dates listed in the statute is mandatory. *Matter of Paternity of A.D.W.*, 693 N.E.2d 576, 578 (Ind. Ct. App. 1998). Here, the trial court made no provision for the retroactivity of its support order. As such, the trial court erred in failing to make the weekly child support order retroactive to at least the date that Mother filed the paternity action. Consequently, we reverse and remand with instructions to do so.

### III. Change of Last Name

Finally, Mother challenges the trial court's order changing B.G.'s last name from hers to Father's. We review the trial court's decision to change a child's name using an abuse of discretion standard. *In re Paternity of J.C.*, 819 N.E.2d 525, 528 (Ind. Ct. App. 2004). A father seeking a surname change for his nonmarital child must prove that the change is in the child's best interest. *Id*. at 527. In determining the best interest of the child, the trial court may properly consider "whether the child holds property under a given name, whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be occasioned by a name change[,] and (if the child is of sufficient maturity) the child's desires." *Paternity of M.O.B.*, 627 N.E.2d 1317, 1318-19 (Ind. Ct. App. 1994). Absent evidence of the child's best interest, the father is not entitled to obtain a name change. *See In re J.C.*, 819 N.E.2d at 527-28 (finding abuse of discretion where trial court ignored best interest standard in ordering change of child's last name).

8

At the paternity hearing, the following colloquy took place concerning the change of

B.G.'s last name:

THE COURT: Okay. And you say the parties wish to address the child's last name. Unless [Father] is a convicted child molester or is a convicted felon or is a serious violent felon or unless there is some really good reason, then we will change the child's name to … [Father's last name] unless the parties agree that it's to stay [Mother's last name]. Having said that, what do you have to say about it?

[MOTHER]: Uhm, I would like it to stay [my last name], I mean [Father] hasn't done anything, so I don't see why he would get the [Father's] name if he hasn't seen him or had anything to do with him.

THE COURT: Well, he's going to pay child support and I guess, I don't know what his intentions are, in regard to this—how old is the child?

[MOTHER]: Nine (9) months.

THE COURT: Nine (9) months old. What do you have to say?

[FATHER]: I think he should [have] my name. I would like something to do with the kid, just kind of like; I don't think I should have to go to her house to see him. I think I should, we should work something out like, I don't know, all the legal stuff first. I mean, I don't know how old does he have to be so like I can get it on the weekend or, I mean, she's going to be there; not like her and her mother sitting there like watching me like hawks or something, at her house.

THE COURT: Well we're not actually here to determine that but you, I mean he does have parental rights; he does have the right to see the child …

[MOTHER]: Oh, yeah.

THE COURT:     … and be involved in the child's life. He's not any of those things that I've said; is a convicted child molester or a serious violent felon or anything like that?

[MOTHER]:      No.

THE COURT:     He is going to be required to pay child support, so; are you employed?

[FATHER]:      Yes.

THE COURT:     Okay. And you intend to pay your child support?

[FATHER]:      Yes.

THE COURT:     Maybe you can work something out. I mean this child is nine (9) months old, is very young; there's no doubt about that. There are guidelines, and you can get a copy of the guidelines in the Clerk's Office, Parenting Time Guidelines, or we may be able to give you a copy, which sets forth what the Indiana Guidelines are for visitation of the non-custodial parent, though right now there is no order established to that effect. Now that is something you can do if you want to. If you are unable to work something out. Clearly, you're far better off for the child if you can work together and both raise this child …. So having said that, we will change the child's name to [Father's last name]. The child's middle name is [A.]? [Spelling]?

[MOTHER]:      Yes.

THE COURT:     It will be [B.A. Father's last name]. And we'll enter an order for the Health Department to change the birth certificate to reflect that. Do you have any questions, [Mother]?

[MOTHER]:      No.

Tr. at 5-7.

Based on the foregoing, it appears that the trial court made its decision to change B.G.'s name by applying a presumption that *unless* Father had a history of certain criminal offenses or unless "some really good reason" existed for *not* changing B.G.'s name to Father's, then it should be changed. *Id*. at 6. Such analysis does not comport with the best interest determination outlined in *J.C.* and *M.O.B.* Simply put, the record is devoid of any indication that the trial court conducted a best interest inquiry before ordering that B.G.'s last name be changed. Thus, we reverse the judgment in this respect and remand for a determination of best interest as it pertains to B.G.'s last name.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BAILEY, J., concur.