

**FILED**

Oct 31 2023, 9:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leah Burris
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Ryan M. Spahr
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Mark A. Wilson,

*Appellant-Respondent,*

v.

Teresa C. Wilson,

*Appellee-Petitioner*

October 31, 2023

Court of Appeals Case No.
23A-DC-1384

Appeal from the Hendricks
Superior Court

The Honorable Rhett M. Stuard,
Judge

Trial Court Cause No.
32D02-2107-DC-445

**Opinion by Chief Judge Altice**
Judges Weissmann and Kenworthy concur.

**Altice, Chief Judge.**

## Case Summary

[1]   This is the second appeal involving the dissolution of the marriage of Mark A.

Wilson (Father) and Teresa C. Wilson (Mother).  In the first, Father appealed

the trial court's dissolution decree, challenging both the division of marital

property and the calculation of his child support obligation for the parties' adult disabled daughter, Emily. Another panel of this court reversed and remanded on both issues.

[2] On remand, the trial court entered an amended decree, which Father appeals. This time he challenges only the trial court's determination regarding child support. He contends that his child support obligation of $226 per week should have been offset by Emily's $840 monthly Social Security Disability Insurance (SSD) benefit.

[3] We affirm.

## Facts & Procedural History

[4] Mother and Father married in 2001 and had Emily the next year. Emily has special needs and, though an adult, functions at about the level of an eight-year-old child. Emily will never be able to live on her own. During the marriage, Father financially supported the family, and Mother was Emily's primary caretaker, working only part-time.

[5] In July 2021, Mother petitioned for dissolution of marriage and, at the end of that year, moved to Florida with Emily to live with Mother's parents. At the time of the final dissolution hearing in July 2022, Mother and Emily still lived with her parents, who did not charge rent. Mother testified that she intends to "find a home of our own" but that "right now I don't make enough to do that." *Transcript* at 36. Mother explained, "I'm not living at my parents' house by

choice[.] I am living there by necessity. We have nowhere else to go." *Id.* Mother was working about thirty hours a week making $16.25 per hour.

[6] At the time of the final hearing, Emily was receiving SSD benefits of $840 per month, with Mother as Emily's representative payee. Mother testified that this money "does not go very far" and that Emily used it each month for personal expenses, such as entertainment, shopping, school fees, and personal care. *Id.* at 13. Emily is also a beneficiary of a special needs trust created by Mother, which was funded with about $6,000.

[7] Mother submitted a proposed child support worksheet with a recommended support obligation to be paid by Father of $262 per week. This was calculated based on weekly gross income figures of $2,623.08 for Father and $436.58 for Mother.

[8] At the final hearing, Father testified that he believed Emily's SSD benefits were sufficient to meet her needs going forward. Accordingly, he asked the trial court not to enter a weekly child support award, and he did not submit a proposed child support worksheet.

[9] On August 4, 2022, the trial court issued a decree of dissolution with findings and conclusions. It distributed the marital estate slightly unequally in favor of Mother and adopted her proposed child support worksheet. Father appealed, challenging both the property division and the child support order. On the issue of child support, the only one relevant here, Father argued that the trial court erred in failing to consider Emily's SSD income when calculating support.

[10]     Another panel of this court reversed and remanded on both grounds asserted by Father. *Wilson v. Wilson*, 205 N.E.3d 238 (Ind. Ct. App. 2023). Regarding child support, the court provided the following brief analysis and directions on remand:

> We reverse a trial court's decision regarding child support if it is clearly erroneous or contrary to law. *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 674 (Ind. Ct. App. 2008) (citing *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008)). The Indiana Child Support Guidelines contain statements which appear to relate primarily to Social Security benefits paid based upon the disability of a parent.[1] Nevertheless, we note that the commentary to Indiana Child Support Guideline 3G states, "[a]lthough Social Security benefits are not reflected on Line 7 of the child support Worksheet, the benefit should be considered, and its effect and application shall be included in the written order for support of that child." Here, Mother testified that [Emily] receives a monthly [SSD] benefit of approximately $840. The court ordered that Father pay $262 per week in support, which is the amount recommended in Mother's proposed child support worksheet. Her proposed worksheet included amounts for the weekly gross incomes of the parties but did not include any adjustments.[2] The court heard testimony regarding the amounts spent on behalf of [Emily] for housing, groceries, and school fees, [Emily]'s Medicaid coverage, the amount held in a trust for [Emily], and the extent to which [Emily]'s expenses were covered by her disability income. In light of the record, we remand for the trial

---

[1] *See* Ind. Child Support Guideline 3A(1) (providing a definition of weekly gross income and stating "Social Security disability benefits paid for the benefit of the child must be included in the disabled parent's gross income. The disabled parent is entitled to a credit for the amount of Social Security disability benefits paid for the benefit of the child."); Child Support Guideline 3G(5) (addressing Social Security benefits received for a child based upon the disability of the custodial or noncustodial parent).

[2] Father does not raise an issue regarding the parties' weekly gross incomes.

court to determine and make findings as to whether [Emily]'s overall financial needs are satisfied in whole or in part by the Social Security benefit she receives and for entry of Father's support obligation which, if appropriate, includes an adjustment for the income [Emily] receives in Social Security benefits.

*Id*. at 242-43 (footnotes in original though numerically different).

[11] On remand, the trial court issued its amended findings and decree of dissolution on May 24, 2023 (the Amended Decree). Relevant here, the Amended Decree provided:

70. Addressing Emily's disability payments, the Court finds that this income is not the result of the disability of a parent but the disability of Emily herself.

71. This is Emily's money.

72. Emily will never be able to work and earn money.

73. She requires regular care.

74. The money provided by the disability payments accounts for this reality and is provided to assist her with the challenges she faces.

75. It is the Court's considered opinion that this amount should play no part in calculating child support for Emily.

76. If a 16-year-old child earns funds from working a job the money earned may indeed contribute to that child or her family's quality of life.

77. Nonetheless, [courts] do not include this in calculating support.

78. That is because generally, that child is not capable of supporting herself, even with a job.

79. The additional income is the child's money.

80. The parents of that working child, including the non-custodial parent, must still provide full support.

81. Under Indiana law, upon turning 19 and being able to earn her own way in the world, a child is emancipated. The policy reasons are that the child, now older, has had an opportunity to obtain an education, has matured, is better at decision making, and is now able to provide support for herself.

82. In other words, the child no longer needs the support of the parents and can take care of herself.

83. Emily will never arrive at this juncture.

84. Thus, her [SSD] income will, for the rest of her life, be needed to provide for her care and the daily realities of living.

85. She needs food, medical care, school tuition, and at times, care to be provided by paid caregivers.

86. Her quality of life depends very much on the disability income she receives.

87. Although funds may at times go into trust for Emily, the necessities of life are many and varied and considering her challenges, this Court is confident in saying that all of the funds paid by the government for Emily, and more, are needed by her to survive in this world.

88. Giving Father credit for these funds against his support obligation significantly reduces the funds available to care for Emily and effectively transfers most of the monetary burden for Emily's care to Mother and Mother's parents.

89. Although the funds aid her caregivers in defraying the high costs of her care, the funds are hers and hers alone and should not be included in any way in the calculation of child support.

90. Thus, considering the evidence presented by the parties, the court orders Father to pay child support to Mother in the amount of $262.00 on a weekly basis.

*Appellant's Appendix* at 18-19. Father now appeals the Amended Decree.

## Standard of Review

[12] Our Supreme Court has long placed a "strong emphasis on trial court discretion in determining child support obligations." *Lea v. Lea*, 691 N.E.2d 1214 (Ind. 1998) (quoting *Stultz v. Stultz*, 659 N.E.2d 125, 128 (Ind. 1995)). Accordingly, a trial court's calculation of child support is presumptively valid, and we will reverse only if it is clearly erroneous or contrary to law. *In re Paternity of K.C.*, 171 N.E.3d 659, 679 (Ind. Ct. App. 2021). A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* On review, we will not reweigh the evidence and will consider only the evidence most favorable to the judgment. *Id.* A trial court's specific findings will be found clearly erroneous "only when the record contains no facts to support them either directly or by inference." *Ratliff v. Ratliff*, 804 N.E.2d 237, 244 (Ind. Ct. App. 2004).

## Discussion & Decision

[13] Father argues that Emily's SSD benefit of $840 per month is "more than sufficient to meet her very minimal needs" and that the trial court erred in

failing to include or consider this income in the calculation of child support. *Appellant's Brief* at 6. Father contends that Emily's SSD benefits should have been fully credited against his support obligation.

[14] The Indiana Child Support Guidelines directly address SSD benefits paid to a child but only in the context of benefits received as the result of a parent's disability. That is, in defining weekly gross income, Guideline 3(A)(1) provides: "[SSD] benefits paid for the benefit of the child must be included in the disabled parent's gross income. The disabled parent is entitled to a credit for the amount of [SSD] benefits paid for the benefit of the child." And Guideline 3(G) addresses adjustments to a parent's support obligation and provides the following regarding the effect of Social Security benefits on a current support obligation:

> 1. Custodial parent: Social Security benefits received for a child *based upon the disability of the custodial parent* are not a credit toward the child support obligation of the noncustodial parent. The amount of the benefit is included in the custodial parent's income for the purpose of calculating the child support obligation, and the benefit is also a credit toward the custodial parent's child support obligation.
>
> 2. Noncustodial parent: Social Security benefits *received by a custodial parent, as representative payee of the child, based upon the earnings or disability of the noncustodial parent* shall be considered as a credit to satisfy the noncustodial parent's child support obligation as follows:
>
>> i. Social Security Retirement benefits may, at the court's discretion, be credited to the noncustodial parent's current child support obligation. The credit is not automatic. The

presence of Social Security Retirement benefits is merely one factor for the court to consider in determining the child support obligation or modification of the obligation. *Stultz v. Stultz*, 659 N.E.2d 125 (Ind. 1995).

ii. Social Security Disability benefits shall be included in the Weekly Gross Income of the noncustodial parent and applied as a credit to the noncustodial parent's current child support obligation. The credit is automatic.

Child Supp. G. 3(G)(5)(a) (emphases supplied).[3]

[15] The Guidelines do not address the issue at hand - SSD benefits received by a disabled adult child, like Emily, for her own disability. And it makes little sense that the benefits she receives for her own disability must be used to offset Father's support obligation. This income does not represent benefits received based on the earnings or disability of Father.

[16] In a different context, our Supreme Court adopted a general rule that Social Security retirement payments to children are not available to offset child support to which a child is otherwise entitled. *Stultz*, 659 N.E.2d at 130. The Court explained in part:

[T]he retired parent pays no additional premiums in order to entitle his or her child to benefits – the amount of social security contributions paid by the retired parent and his or her employer

---

[3] The commentary to Guideline 3(G) similarly addresses SSD benefits only to the extent they are based on a parent's disability. This commentary repeatedly refers to the "disabled parent" and explains that SSD benefits paid to a child are recognized as earnings of the disabled parent, noting that "SSD is, by definition, a substitution for a person's income lost due to a recognized disability."

> are the same whether the parent is married or single and whether he or she has children or not. Perhaps more significant, the retired parent's own social security retirement benefits are not reduced or changed by the benefits his or her children receive. It seems to us that what is going on here is that Congress has created an entitlement for the minor children of all social security participants who retire. But it is the children's entitlement, not the retiree's, and should not as a general rule diminish the legal obligation of retirees to support their children

*Id*. The Court also noted "the unfairness of granting a retiree parent credit for payments received by a child" and referenced the following excerpt from the custodial mother's brief: "In this case, the husband, although he has regular and ongoing income, will pay NO child support. Uncle Sam will pay it for him. The children, on the other hand, will have their support cut in half." *Id*. at 130 n.9. The *Stutz* holding is now reflected in Guideline 3(G)(5)(a)(2)(i), as set out above.

[17] In a footnote, the Court in *Stutz* acknowledged that "a social security disability recipient parent" might make a stronger case for a credit than a social security retirement recipient because "disability may affect the parent's and child's standard of living in dramatically different ways than retirement." *Stultz*, 659 N.E.2d at 130 n.6. Confronted with such a case several years later, in *Brown v. Brown*, the Court held that "a disabled parent is entitled to a credit against the parent's support obligations for [SSD] benefits paid to a child." 849 N.E.2d 610, 612 (Ind. 2006). In so holding, the Court observed that SSD payments to a child are essentially "a substitute for the disabled parent's earnings rather than gratuities from the federal government." *Id*. at 614. The Court further stated:

> Although we hold that a disabled parent is entitled to have child support obligations credited with the [SSD] benefits received by the child because of that parent's disability, we see no reason to revisit our holding in *Stultz* with respect to the discretion of the trial court when presented with a request for a credit for Social Security retirement benefits. Disability impacts a parent's earning capacity and, therefore, a child's standard of living, in a fundamentally different way than does retirement. The trial court is in the best position to assess the impact of retirement in any particular case.

*Id*. The *Brown* holding is now reflected in Guidelines 3(A) and 3(G)(5)(a)(2)(ii).

[18] Here, Emily's SSD payments are entitlements from the federal government that are not intended to be a substitute for Father's earnings. We agree with the trial court that this income is like that which a child might earn from a part-time job.

[19] In *Lea v. Lea*, 691 N.E.2d 1214 (Ind. 1998), our Supreme Court rejected a noncustodial father's argument that his support obligation should be reduced to zero due to his incapacitated adult daughter's weekly income of about $144 from a part-time job. The trial court had declined to relieve him of any child support obligation, instead calculating the weekly support obligation based on the income of the parents and the child and then apportioning the support based on the relative amount earned by each.

[20] In affirming the trial court's methodology, the Court emphasized the broad discretion afforded trial courts in determining child support obligations and observed that the Guidelines did not yet provide specific guidance on how to treat an incapacitated adult child's own income. *See id.* at 1217. It made an

analogy to the determination of child support where a child has extraordinary educational expenses and noted that the Guidelines call for the consideration of income and assistance available to the child, such as scholarships, grants, student loans, and summer and school-year employment. *Id.* (citing Child Supp. G. 3(E)(3), which is now found at Child Supp. G. 8 in a substantially amended form). The Court found this analogy useful "because it both acknowledges the propriety of considering a child's earnings in making a support calculation and emphasizes the broad discretion the trial court enjoys in such matters." *Id.* at 1218.

[21] Ultimately, the Court refused to mandate that a trial court reduce the total support obligation by the amount the child contributes to his or her own support, explaining:

> Such an appellate court mandate impermissibly impinges upon the discretion that trial courts enjoy in determining support obligations. While such an approach might well be appropriate in some circumstances, we reject the notion that it is mandated either by statute or the Guidelines.

*Id.* The Court found the different approach used by the trial court to have been "entirely consistent with the Guidelines in general and the analogous provisions discussing student earnings in particular." *Id.*

[22] After *Lea*, the following commentary was added to Guideline 3(F):

> **2. Apportionment of Support When Incapacitated Adult Child has Earned Income**. Under certain circumstances the earned

income of a child *may be considered* in apportioning support. In calculating a support obligation with respect to an incapacitated adult child with earned income, the support obligation *may be determined* by apportioning the support based upon the relative amount earned by the parents and the child.

(Emphases added). This commentary reflects the broad discretion afforded trial courts in these matters. That is, a trial court may consider the earned income of an incapacitated adult child when apportioning support, but such is not required. We believe this same flexibility should be afforded a trial court when considering the effect, if any, that an incapacitated adult child's SSD benefits should have in the calculation of a particular support obligation.

[23] Father's position that the trial court should have offset his support obligation by the full amount of Emily's SSD benefits is not supported by the Guidelines, analogous caselaw, or common sense.[4] And his claim that Emily's financial needs are fully covered by her SSD benefits is pure folly and ignores the reality that, at the time of the final hearing, Mother and Emily remained financially unable to move out of Mother's parents' home. As the trial court observed, giving Father a credit toward his support obligation would significantly reduce the funds available for Emily's care and effectively transfer most of the

---

[4] We note that Father does not make the more tenable claim that the trial court should have determined the support obligation by apportioning support based on the relative amounts earned by Father, Mother, and Emily – the methodology used by the trial court in *Lea*. By our own calculations, such would have resulted in a reduction of his support obligation of about $40 per week, much lower than the full credit he sought. Regardless, Father did not present the trial court with a proposed child support worksheet with such calculations.

monetary burden for Emily's care to Mother and Mother's parents. We cannot say that the trial court abused its discretion when it considered the circumstances of this case, along with Emily's SSD benefits, and determined that Father was not entitled to a reduction in his support obligation.

[24] Judgment affirmed.

Weissmann, J. and Kenworthy, J. concur.